## Barrett v. Commonwealth.

(Decided May 4, 1934.)

KASH C. WILLIAMS and WILLIAMS & ALLEN for appellant.

BAILEY P. WOOTTON, Attorney General, and DAVID C. WALLS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Affirming.

The appellant, Ray Barrett, appeals from a judgment sentencing him to imprisonment in the penitentiary

for life for the murder of Elisha Mason. He was jointly indicted with Arkie Terry and the two defendants were tried together. The jury acquitted Arkie Terry.

Elisha Mason was the son of Mint Mason, who was a tenant on the farm of Jake Terry, husband of Arkie Terry, and a stepbrother of appellant, who is the son of Mrs. Mint Mason by a former marriage. The deceased lived with his father on Turkey creek in a remote section of Breathitt county, and appellant lived at the home of Jake Terry, a short distance from the Mason home. The killing occurred shortly after dark on Tuesday evening before the August, 1933, primary election at a point about 200 yards from the Mason home.

The evidence for the commonwealth consists principally of alleged confessions of appellant, made in the presence of various persons on different occasions, and the dying declaration of the deceased.

The evidence tends to show that appellant went to the Mason home and requested the deceased to accompany him to the post office. When they had walked about 200 yards, appellant, without warning, shot Mason in the back twice with a shotgun. Mint Mason heard the shots and his son's cries for help. He left the house and met appellant carrying a shotgun. When asked what had happened to Elisha Mason, appellant replied that he had shot him. The deceased lived about three hours and before his death stated in the presence of a number of persons that appellant shot him with Jake Terry's shotgun. Appellant left the Terry home before daylight the following morning and went to the home of a relative in Owsley county. Before he was arrested and while he was in Owsley county, he told Asberry Caudill and his uncle, Logan Barrett, that he shot Mason. After he was arrested and placed in the Breathitt County Jail he sent for James Goff, coroner of Breathitt county, and told him that he shot Mason and that he had been hired to commit the crime. He implicated Arkie Terry. While in jail he made similar statements in the presence of William Terry, a nephew of Jake Terry, and several members of his family. He appeared voluntarily before the grand jury and recited the details of the killing. On his trial he denied that he had made some of the confessions attributed to him and repudiated the others on the ground that they were

made under duress and at a time when he believed that his life was in danger. He denied that he shot Mason and testified that he was in bed at the time in the Jake Terry home where Morton Hollon and Clay Gabbard also spent the night. He was corroborated to some extent by Jake Terry and Arkie Terry and by his affidavit for a continuance in which he stated what Morton Hollon would testify to if present and which was read as Hollon's deposition. The evidence was amply sufficient to sustain the verdict and no complaint is made in this respect.

The appellant contends that the instructions given were prejudicially erroneous and that the court failed to give the whole law of the case. In instruction No. 1 the court told the jury that if they believed from the evidence beyond a reasonable doubt that Barrett killed Elisha Mason "when it was not necessary and did not appear to the defendant to be necessary to protect himself from danger, real or apparent, of death or great bodily harm at the hands of the deceased, Elisha Mason," they should find him guilty of murder if they believed from the evidence beyond a reasonable doubt that the killing was done unlawfully, willfully, feloniously, and with malice aforethought. The complaint made of this instruction is that the conjunctive "and" was used instead of the disjunctive "or" and that the right of appellant to defend himself against death or great bodily harm was made to depend not only on what reasonably appeared to him to be necessary, but on what was actually necessary to protect himself therefrom. The word "or" should have been used, but the error was cured by the instruction on self-defense which reads:

"If the jury believe from the evidence that at the time the defendant, Ray Barrett shot the deceased, Elisha Mason, if he did so do, he, the defendant, believed and had reasonable grounds to believe that he, the defendant, was then and there in immediate danger of death or the infliction of some great bodily harm at the hands of the deceased, Mason, and that it was necessary or was believed by the defendant, in the exercise of reasonable judgment to be necessary to shoot, wound and kill the said Mason in order to avert the danger, real or to the defendant apparent, then you ought to acquit the defendant upon the ground of self-defense and apparent necessity."

When the instructions are read together, it is apparent the jury could not have been misled, and it follows that the use of the word "and" in instruction No. 1 was not prejudicially erroneous.

Instruction No. 2 reads:

"If you believe from the evidence beyond a reasonable doubt that in this county and before the finding of the indictment herein, the defendants, Ray Barrett and Arkie Terry, did unlawfully, willfully, feloniously and of their malice aforethought confederate, conspire and agree with each other and together to kill and murder Elisha Mason, and that in pursuance of said conspiracy, confederation, agreement and banding together and while same existed, the defendant, Ray Barrett, a party to said conspiracy, if any conspiracy existed, did kill and murder the said Elisha Mason, then the jury ought to find the defendant, Arkie Terry, guilty of murder as charged in the indictment, and fix her punishment at death or confinement in the state penitentiary for life in your discretion."

It is insisted that there was no evidence of a conspiracy and that this instruction should not have been given and that its effect was to mislead and confuse the jury. There was some evidence of a conspiracy, but, even if it had been insufficient to authorize a submission of the case as to Arkie Terry, the substantial rights of appellant were not prejudiced by the giving of the instruction, since it applied only to Arkie Terry and the jury was not authorized to find appellant guilty under it. The jury acquitted Arkie Terry and thus found that no conspiracy existed. The rights of appellant, therefore, could not have been prejudiced by this instruction.

It is finally insisted that the court should have submitted to the jury the question as to whether appellant's confessions made, while in jail and before the grand jury, were voluntary or obtained in violation of sections 1649b-1 to 1649b-4, Kentucky Statutes, known as the Anti-Sweating Act, and the case of Bennett v. Commonwealth, 226 Ky. 529, 11 S. W. (2d) 437, is relied on.

In the Bennett Case there was evidence that the confession was obtained as the result of seven hours of questioning by police officials, during which time the accused was handcuffed, held without food, and sub-

jected to insults and physical violence. The evidence for the commonwealth was that the confession was voluntary. Under these facts it was held that whether or not the confession was voluntary was a question for the jury.

In the instant case there was no evidence that appellant's confession was extorted from him in violation of the statute. The appellant testified that he made the incriminating statements in the presence of the grand jury and while he was in jail because he was afraid he would be killed if he failed to state that he had shot Mason, but he testified to no state of facts warranting such a belief on his part. He was not subjected to coercion of any sort. On cross-examination he admitted that he went before the grand jury of his own volition and that his statements there were made voluntarily. There is no evidence that any one extorted the admissions from him by plying him with questions or by threats or other wrongful means within the meaning of section 1649b-1, Kentucky Statutes. There being no issue as to whether or not the statements were voluntarily made, the appellant was not entitled to the instruction directed to be given in the Bennett Case.

A careful examination of the record fails to disclose any error prejudicial to appellant's substantial rights, and the judgment is affirmed.