# Gregory v. Commonwealth.

(Decided Jan. 25, 1935.)

JOHN T. McCOY for appellant.

BAILEY P. WOOTTON, Attorney General, **and DAVID C.** WALL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

At the trial of an indictment accusing appellant and defendant below, Thomas Gregory, of the crime of storehouse breaking, he was found guilty and punished by confinement in the penitentiary for one year. His motion for a new trial having been overruled, he prosecutes this appeal. In it he incorporated fourteen grounds as alleged errors justifying, as he contends, a reversal of the judgment, but in brief of his counsel filed in this court many of them are not referred to; the chief ones discussed therein being: (1) Error of the court in admitting and rejecting testimony; (2) error of the court in overruling defendant's motion for a directed acquittal; (3) insufficiency of the evidence to

establish corroboration of an accomplice who testified for the commonwealth, and (4) that the verdict is flagrantly against the evidence.

A mere mention is made in brief to the instructions given by the court which it is claimed were erroneous; but no alleged error concerning them is pointed out, and we have closely and critically examined them and find no fault therewith, and the reference thereto in brief of counsel will receive no further notice by us. The other errors of the fourteen set forth in the motion for a new trial are many of them duplicates of others, and those of which they are duplicates are wholly immaterial and unsustained by the record. They are but leaps in the dark with the taking of a chance as to where the landing will be. We will, therefore, confine the opinion principally to the grounds we have stated, disposing of them in the order named.

1. By far the greater bulk of the brief is composed of criticisms of the trial judge in sustaining the commonwealth's objections to questions propounded by defendant's counsel, but there is not a single avowal in the entire transcript of the evidence. Some of the questions so propounded to witnesses, perhaps, appear to be remotely relevant, provided a favorable answer to the defendant was given, but which, of course, would serve him no purpose if the answer was against him or negative in its nature, and without knowing what the answer would be, which can be mirrored to us only by an avowal, we are not authorized to consider any of the complaints made under this ground directed at the actions of the court in sustaining the commonwealth's objections to such questions. That rule of practice is too fundamental to require the insertion of our opinions adhering thereto without any to the contrary.

Another very considerable space of the brief is taken up with complaints of testimony offered by the commonwealth, but in more than 50 per cent. of the instances cited there was no objection to the question. In the larger per cent. of instances where objection was made the testimony was either relevant or plainly immaterial, and in the small per cent. of the instances where the court overruled defendant's objections thereto, when, perhaps, it should have been sustained, the answers were upon minor and immaterial points and could not possibly have influenced the jury in determin-.

ing the main issue of defendant's guilt or innocence. As illustrating the general nature and character of the argument as contained in brief, we will refer to one portion of it relating to the testimony of the prosecutor (Theodore Lewis) whose storehouse was broken into, and who later discovered some of the stolen goods therefrom at the homes of two persons, one of them residing in Knox county and the other in another county, and to which places the thieves had carried and deposited them; but neither of them was present at the time of the commission of the offense, nor were they related to defendant; but it was proven by the members of the household at which one of the deliveries was made that defendant was one of those who did so, and the accomplice (Ed. Gregory), who confessed the crime at the trial, was another one of those who carried the goods to that place. Theodore Lewis, whose storehouse was robbed, while on the stand was asked:

"Did you at any time locate any" (of your goods), to which objection was made, but it was overruled and he answered, "I did."

"At whose home did you locate your merchandise? A. At John Lewis' in Barbourville.

"Q. Did you recover any of that merchandise? A. I did.

"Q. Was there some sugar taken from your store that night? A. Yes sir."

The criticisms of those questions and answers are thus set forth in brief referred to: "We are of the opinion that the court erred to the prejudice of the defendant's substantial rights in admitting the prosecution witness, Theodore Lewis, to state to the jury the answers to the questions asked by the attorney for the commonwealth as set forth heretofore," etc., notwithstanding the commonwealth later proved that defendant was one of those who made the delivery at that place. It is, therefore, clear that it would be an unnecessary consumption of time or space to notice in detail the complaints of the nature of the one cited. Not all of them are of the unweighty nature as the illustration we have made, but it may truthfully be said that none of them, as relating to this ground, point out any substantial prejudicial error, and for which reason we will dismiss this ground without further comment as being wholly unsustainable.

2. The consideration of this ground requires a brief statement of the substantial facts. Theodore Lewis' storehouse was located some few miles from Manchester in Clay county, while defendant lived some twenty-five miles therefrom in Laurel county, a short distance from London, its county seat. Ed Gregory confessed and testified at the trial that he, Jim Steele, and defendant herein, together with a colored man, broke into the store of Theodore Lewis on the night in question and took therefrom goods, wares, and merchandise of the value of about $175. He described the travel of the parties with the goods after they were so taken, a part of which was to defendant's home, but they were not deposited there, or at least all of them were not, and they left a part of them later at the house of John Lewis in Barbourville in Knox county, and the remainder was carried to the home of the brother of Jim Steele in another adjoining county, at which two places Theodore Lewis found a part of them some few days after the commission of the offense. John Lewis, at whose house some of the goods were found, together with other members of his family, testified that the thieves (including defendant) appeared at his house on the night when the store was robbed at a late hour, and after waking him he was informed by them that they had purchased some goods and their automobile had broken down so that the load was too heavy to be carried and requested him to let them deposit the goods at his house, which it appears he agreed to. They unloaded the larger part of them, and perhaps as he thought all of them, but it turned out that they thereafter carried the remnant to the home of the brother of John Steele. There was testimony on the part of the commonwealth that defendant was seen that night in the automobile with his confederates, or at least some of them, including Ed Gregory, who confessed, and it was likewise proven that while the robbery was going on (but which the witness who testified to it did not then know) he (witness) saw defendant in an automobile stopped in front of the store that was being robbed. There was also testimony that when defendant's house was searched four days after the theft a large container was discovered filled with sugar, but the top of which was covered with corn meal, and a new broom was found similar to those that had been taken from the store with its handle freshly painted white. There were other circumstances in the

case pointing more' or less to defendant's guilt, but which we deem unnecessary to recite.

Defendant sought to establish an alibi by showing that in the early part of the night when the offense was committed he spent the time from about 7 o'clock to 9:30 at the home of a neighbor by the name of Hatfield, and every one of the witnesses who testified to that portion of the alibi ,noticed the clock at the Hatfield home, both when defendant arrived there and when he departed therefrom. In doing so they were made by the cross-examiner to state that when he arrived the hour hand of the clock pointed at the seventh hour on the dial and the minute hand was exactly at the twelfth hour thereon, and that when he left the Hatfield home the hour hand was exactly halfway between the ninth and tenth hour with the minute hand at the exact lower point of the dial. Continuing the establishment of his alibi, defendant introduced witnesses who were at or immediately came to his home, on a plausible errand, after he returned from the Hatfield home, and which they or some of them said was exactly at 9 o'clock according to their timepiece and the one in the home of defendant, which they noticed with the same particularity. It is admitted by defendant that Ed Gregory and Steele and the colored man came to his house after the theft had been committed with the goods taken from the store in their automobile (but later taken to and left at the homes hereinbefore referred to), but he persistently denied that he had anything to do or any connection with the perpetration of the crime. With this brief statement of the salient facts it would hardly comport with established rules to hold that defendant was entitled to the peremptory instruction contended for, and the same conclusion also disposes of ground 4, to which no further reference will be made.

3. What we have said in disposing of ground 2 likewise disposes of ground 3, since it therein appears that the confession of Ed Gregory, in which he indisputably implicates defendant as one of the guilty parties, is corroborated by John Lewis and the members of his family; by the witness who testified to seeing defendant traveling in Ed Gregory's automobile that night; by the witness who saw him in the automobile at the robbed store, and to some extent by the goods found in his house with the evidence of efforts to con-

ceal their identity to which we have referred. If, however; it should be said that there was enough in the case to implicate John Lewis as an accomplice in the robbery, then there is still left the testimony of the other members of his family to the same effect, as well as the other two items of evidence to which we have referred, and which latter was given by witnesses toward whom no finger of guilt may be pointed. Section 241 of the Criminal Code of Practice requires the corroborating testimony of an accomplice to go no further than "tending to connect the defendant with the commission of the offense," but which is not done by merely showing "that the offense was committed, and the circumstances thereof." The corroborating testimony in this case, even eliminating that given by John Lewis, not only tends to connect the defendant with the commission of the offense, but it directly and expressly connects him therewith, and it is plainly fallacious to argue to the contrary. It is, therefore, clear that this ground is without merit.

Another argument made in brief, but not enumerated above, is the failure of the court to admonish the jury as to the purpose of certain impeaching testimony. No such request was made, nor in most instances was the attention of the court called thereto by objection to the testimony or otherwise. In the case of McDaniel v. Commonwealth, 185 Ky. 608, 215 S. W. 544, we went extensively into this question and cited all of our prior cases involving the question. Among the many cases referred to was that of Ochsner v. Commonwealth, 128 Ky. 761, 109 S. W. 326, 327, 33 Ky. Law Rep. 119, in which we expressly held that an admonishment as to the purpose of testimony "is not within the definition of *instruction* as used in that section of the Code [225]" and for which reason "they need not be in writing nor were they included in the rule requiring the court in criminal trials to give to the jury the whole law of the case," and that for defendant to obtain the benefit of such refusal on the part of the trial court he must in some manner, by objection or otherwise, call the attention of the court to the alleged error. Since the McDaniel opinion was rendered, we have to a large extent modified the rule as laid down therein by holding that, if the impeaching testimony, the purpose of which the court did not admonish the jury, was of such a *clear* nature as that it on its face revealed its purpose, then

an admonishment was not necessary and the failure to give it would not constitute reversible error, even though the proper course was pursued authorizing its giving in cases where it was necessary. The complained of failures in this case come .within the latter class, and, were there no other reasons excusing the court's failure in this case, the modified rule last referred to would be sufficient for that purpose. We deem it unnecessary to further lengthen the opinion, since our careful reading and study of the record convinces us that no substantial material error was committed at the trial and that the evidence is amply sufficient to sustain the conviction.

Wherefore, the judgment is affirmed.