## Rogers v. Commonwealth

(Decided May 8, 1936.)

188

LOUIS I. IGLEHEART for appellant.

B. M. VINCENT, Attorney General, and GUY H. HERDMAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

For the fiscal or tax collecting year of 1933, the appellant, Charles A. Rogers, was elected or appointed to a number of inconsistent and incompatible official positions in and for the city of Owensboro, Ky., one of which was that of city tax collector. After his settlements as such collector, an audit was made of his books and he was found to be short in his accounts to a considerable amount. At the January, 1935, term of the court the grand jury of the county returned an indictment against him accusing him of the crime denounced by section 1205 of our present Statutes. It averred that as such officer he had collected from George E. Brooks, a taxpayer in the city, the sum of $208.98 in payment of taxes owed by Brooks for the year 1932, and that he (defendant) violated his duty as such collector to report and account for that payment to him, and that he "willfully, unlawfully, intentionally, fraudulently and feloniously embezzled and converted the said sum of money to his own use and purpose, with the felonious and fraudulent intention permanently to deprive the city" of its property therein. Other necessary averments were made and there can be no question as to the sufficiency of the indictment. Upon trial

thereof defendant was convicted and punished by confinement in the penitentiary for one year and six months. His motion for a new trial was overruled and from the verdict and judgment thereon he prosecutes this appeal, urging as grounds therefor: (1) Error in overruling defendant's motion for a peremptory acquittal; (2) incompetent evidence admitted over his objections; (3) failure of the court to admonish the jury as to some of the testimony introduced by the commonwealth; and (4) erroneous instruction No. 1 given by the court, each of which will be disposed of in the order named.

1. The check for the taxes of Brooks was issued and delivered to defendant in March, 1933, with the request that he hold up its presentation for a few days, which he did. In about a month thereafter it was presented to the bank on which it was drawn and cashed; but at the time of the issuing of the check defendant gave a receipt for the taxes, but neither it nor the stub in the receipt book and from which it was detached bore any date. Subsequent settlements of defendant of the taxes collected by him failed to disclose the payment by Brooks, and it was thoroughly demonstrated that it never was accounted for. Defendant in his testimony, when confronted with the situation as so developed from his books and as so discovered by an auditor, stated that he did not understand why the item was not disclosed and he also stated in the presence of the auditor and an assistant, or another person present, that he himself had cashed the check. However, at his trial, he testified that he did not do so. On the contrary, he stated that when he was requested to hold up the check for awhile he put it in the back of a drawer at his desk and that he never saw it thereafter. He stated that some of the employees in the office would sometimes deposit such checks or collect them and report the amount, and that the Brooks check was indorsed in stencil with his name as tax collector made by a stenciling stamp which he had procured for convenience in signing his name. He, therefore, sought to create the impression that some of such employees who had been permitted to perform such acts had themselves cashed the check and which, if done, he or she failed to report it; but practically if not all of those employees were introduced and denied having done so.

The skeleton statement of the general substance of the testimony is sufficient to establish the absence of error relied on in support of ground (1), and for which reason we do not deem it necessary to make a more detailed statement of the evidence in support of our conclusion with reference thereto.

2. The complained of testimony under ground (2) consisted in the introduction of the tax books containing collections and settlements made by defendant for all the months of that year, beginning with February when he made his first settlement and continuing to the end of the period for that year during which he made collections. Perhaps in some of them full payments of amounts shown to have been collected were not made, and, of course, that testimony also disclosed any overpayments above amounts shown to be collected, if any. The purpose of the introduction of that testimony may have been to prove a general intent and motive on the part of the defendant to perpetrate the crime with which he was charged by showing his general course of conduct with reference to such matters, and whether or not it was proper for that purpose need not be determined, since we conclude the testimony was proper for another reason; which was—to show that defendant had not accounted for the item of taxes with which he was charged as wrongfully appropriating to his own use. If the testimony referred to showed any prior overpayments entitling defendant to retain later collections in order to balance his account, then it might well be argued that he had not criminally made the appropriation, although he had never reported it and the complained of testimony with reference to prior settlements to the Brooks collection was relevant for the purpose of disproving any such possible defense. Likewise, the introduction of the same character of evidence, pertaining to subsequent collections and settlements, was relevant to show that defendant at no time throughout the year in which the Brooks collection was made accounted for it. Therefore, if, perchance, any of those settlements disclosed shortages with reference to other collections than the Brooks one, it was but an incidental matter, and, therefore, unavoidable. We, therefore, conclude that the testimony complained of was competent, and that the court properly admitted it. But if otherwise, it is difficult for us to perceive how it

was prejudicial to the substantial rights of appellant, and unless so we are not authorized to disturb the verdict therefor. See section 340 of the Criminal Code of Practice and the many cases cited in the notes thereto. We, therefore, conclude that this ground is also without merit.

3. Upon the questions as to the duty of the trial court to admonish the jury as to the purpose for which the foregoing and some other similar evidence was allowed to be introduced, and the effect that this court should give to its failure to do so, there is some confusion in our opinions, growing out of the fact that some of them (notably the earlier ones) appear to have announced the rule that the duty of the court to so admonish the jury was ordinarily mandatory and to such an extent that a failure to do so required a reversal of the judgment of conviction, regardless of all other facts and circumstances proven in the case. Our later opinions have to a great extent gotten away from that peremptory rule and have adopted the more reasonable one (and which is abundantly authorized by section 340 supra, of the Criminal Code of Practice) to the effect that, unless it shall appear from the whole record that the failure to admonish (even when proper) was prejudicial, it will not ipso facto authorize a reversal. Such later opinions hold that before the error, if one, shall be given such reversing effect, it should appear that the court's failure to admonish operated prejudicially to the rights of the defendant on trial. Such was the holding in the case of Johnston v. Commonwealth, 170 Ky. 766, 186 S. W. 655, 657, and which is the chief one relied on by counsel for appellant in support of this ground. Our opinion therein said that it is generally the duty of the court to give such admonishments to the jury "when the evidence is not convincing of defendant's guilt," nevertheless in the same paragraph it was also stated that the error was "not prejudicial when the evidence of guilt is clear and convincing and the trial is otherwise fairly conducted." To the same effect is the case of Tincher v. Commonwealth, 253 Ky. 623, 69 S. W. (2d) 750, 753.

In the latter case the complained of testimony had not been properly objected to so as to entitle the appellant to the benefit of the error if one. However, in disposing of it, we treated it as though the question

was duly presented and then disposed of it in this language: "But the purpose of the complained of testimony in this case was to establish, not only the conspiracy, but likewise the determination on the part of the conspirators to carry it out at whatever cost and regardless of consequences. It was purely substantive testimony, and for which reason it is extremely doubtful if an admonishment would be required if its introduction had been p r o p e r l y complained of. More over it should be remembered that we are not authorized to reverse a judgment, not even one imposing the death penalty, except in cases where the error complained of clearly operated prejudicially to the rights of the one on trial, and in this case the testimony objected to in this subdivision [of the opinion] could not possibly have prejudiced the rights of the defendant as to his guilt or innocence of what took place in the bank at the time Keenon was shot." Other later opinions dealing with the question, and in conformity with the more reasonable practice, have held that such an admonishment, not being a technical instruction on the merit of the prosecution, is not required to be given by the court under the rule that it is its duty to give the whole law of the case whether requested or not. See McCarty v. Commonwealth, 216 Ky. 110, 287 S. W. 363; Eaton v. Commonwealth, 230 Ky. 250, 19 S. W. (2d) 218; Keller v. Commonwealth, 230 Ky. 815, 20 S. W. (2d) 998; Johnson v. Commonwealth, 240 Ky. 123, 41 S. W. (2d) 913; McGee v. Commonwealth, 246 Ky. 445, 55 S. W. (2d) 382; Stigall v. Commonwealth, 257 Ky. 342, 78 S. W. (2d) 22; and compare also Gregory v. Commonwealth, 257 Ky. 438, 78 S. W. (2d) 327.

An additional reason why the admonishment was not required in this case is that the testimony, as we have hereinbefore pointed out, was not impeaching or merely contradictory in its nature, but was substantive evidence introduced for the purpose of showing that defendant had not accounted for the particular collection for the wrongful conversion of which he was indicted, and it will be observed from the excerpt, supra, taken from the opinion in the Tincher Case, that when the evidence is of that nature an admonishment is not required in any event. We, therefore, conclude that this ground is likewise without merit.

4. The complained of instruction **No. 1,** as con-

tained in ground (4), followed the language of the statute under which the indictment was drawn, as well as that of the indictment itself. It told the jury that if it believed from the evidence beyond a reasonable doubt that defendant was tax collector of the city of Owensboro, and, as such, collected the involved tax with which he was charged as wrongfully appropriating and thereby became possessed of money belonging to the city, and that he unlawfully, willfully, and feloniously appropriated or converted it to his own use without the city's consent, then he should be convicted. The criticisms of that instruction are (a) that the court should have stated to the jury that before defendant. could be convicted, although he may have converted to his own use the amount with which he was charged, it should have been "fraudulently" done, and (b) that the court erred in inserting in the instruction the word "and" where italicized in this excerpt therefrom: "Did unlawfully, willfully and feloniously appropriate or convert to his own use and benefit $208.98, lawful money of the United States of value *and* the personal property of the city of Owensboro."

The case of Commonwealth v. Bain, 240 Ky. 749, 43 S. W. (2d) 8, is chiefly relied on. But an examination of that case reveals that it has no application to the question here presented. The only question involved therein was the sufficiency of the indictment to which the trial court sustained a demurrer, but which. ruling we reversed. The accusatory part of the indictment therein accused defendant with the common-law offense of embezzlement; whilst the descriptive part was drawn under section 1205, supra, of our Statutes, being the one under which appellant herein was indicted. The opinion had nothing to do with the question of appropriate instructions under a good indictment drawn under that section. An inspection of its language will disclose that the offense therein is committed if one having the lawful custody of money, with the duty to pay it to the true owner, fails to do so, but willfully misapplies and appropriates it to his own use or otherwise wrongfully and fraudulently disposes of it to his own use and purposes. The court in this case, as will be seen from the excerpt from the criticized instructions, required the jury to believe that the appellant "unlawfully, willfully and feloniously" violated

the terms of the Statute under which he was indicted for the purpose therein stated. The *indictment* did not accuse appellant with only "fraudulently" converting or disposing of the money that he had collected as taxes due the city of Owensboro. It also charged him with "willfully, unlawfully, intentionally and feloniously" converting and appropriating the Brooks collection to his own use with both "felonious and fraudulent intent," etc. The *Statute,* after requiring the manner of misappropriation to be "willfully" made, also says, "or otherwise wrongfully and fraudulently dispose of such money," etc. When the jury found under the instruction as given that the appropriation in this case was "unlawfully and feloniously" made, it was not requisite that they should further believe that it was also "fraudulently" made. The terms employed in the instruction, as descriptive of one of the methods by which the offense might be committed, were broad enough to embrace all of the elements contained in that word, since we are unable with the aid of the most refined logic to draw any distinction between "unlawful, willful, intentional and felonious" misappropriation, and that of a "fraudulent" misappropriation. When, therefore, the manner employed is embraced by the first descriptive words, it necessarily follows that the act was also done in the manner described in the last descriptive word (fraudulent). We conclude that the language of the instruction was sufficient and that it was unnecessary for it to expressly contain the word "fraudulently," and, of course, unnecessary for that word to be defined, even if it should be conceded that such a definition should be given in cases where it is employed and required (under the facts) to be embraced in the instruction. We, therefore, conclude that criticism (a) in support of this ground is unavailable.

In arguing criticism (b) of the same ground, it is insisted that the word "and," as appearing in the instruction in the manner hereinbefore pointed out, had the effect to force a conviction if the jury believed that appellant had wrongfully converted *other* property of the city of Owensboro than the $208.98 that he had collected from the taxpayer Brooks, as charged in the indictment. Differently stated, the contention of learned counsel representing appellant is that the instruction as written, with the word "and" in it at

the place indicated, enlarged the scope of the instruction so as to embrace *any* property of the city that appellant may have converted, whether it was or was not the check of Brooks but which was the only item or amount he was specifically charged with converting. That criticism is not only extremely technical, but it is also, as we conclude, unsustainable. The instruction required the jury to believe beyond a reasonable doubt that the only fund wrongfully misappropriated by defendant should be the collection he made from Brooks, the taxpayer. It then immediately follows, "and the personal property of the city of Owensboro." That language was clearly meant to indicate and point out the further requisite that the amount represented by the Brooks check was the property of the city, and did not and does not (except by a most strained and unfounded interpretation) permit a conviction if the misappropriated fund by defendant was composed of other amounts than that of the Brooks check. We, therefore, regard this criticism as unfounded.

From what we have said up to this point, it will be noted that the points made in criticism of the verdict, and the rulings of the court complained of during the trial, are each extremely technical and are based upon the theory that the average juror is incapable of properly appraising and comprehending the ordinary and sometimes inescapable occurrences happening during a trial; and that his stupidity in that respect causes him to be led astray and to wander away from the true issue in the case and to thereby return a false verdict. At one time in the history of the jury system such theories may have had foundation for their entertainment, but the average juror of today, with all of the modern opportunities for enlightenment, usually possesses sufficient education and general knowledge of affairs to enable him to separate the wheat from the chaff, and to measure up to the full requirements of his responsible position. In such circumstances and conditions, courts have become less inclined to attach the importance to such slight deviations from the correct practice as was once their inclination.

It not appearing that any of the errors relied on is sufficient for that purpose, the judgment is affirmed.