# Rogers v. Commonwealth.

(Decided May 12, 1936.)

LOUIS I. IGLEHEART for appellant.

B. M. VINCENT, Attorney General, and **GUY H. HERDMAN,** Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

The indictment charges Charles A. Rogers with the embezzlement of "$3,230.78, in lawful money of the United States, said money being the property of the said city of Owensboro," in his custody as manager of the electric and water works office of the city. The verdict of guilty fixed his punishment at two years' confinement in the penitentiary.

There were three windows at the office through which customers paid their water and light bills. Stubs covering the accounts were detached from the bills presented and paid to the clerks, and the other parts returned as receipts to the customers. At the end of the day the aggregate of the stubs should have balanced with the money taken in. Daily reports and entries were made by each teller and the money and stubs turned over to Rogers as the manager. The receipts were credited to the accounts of the respective customers from the stubs by the bookkeeper, but the money was entered on the cash book by Rogers in his own hand. Receipts by mail went directly to him, but the custom was to handle them as if they had passed through the windows. The record of the light and water receipts taken in at the windows on October 10, 1933, showed $2,708.72 at No. 1, $3,258.03 at No. 2, and $3,575.32 at No. 3. The individual customers' accounts were duly credited by those sums, and entries on the cash book corresponded. On that day a check of the Ken-Rad Corporation in payment of nine bills amounting to $3,230.78 was received through the mail by Rogers. It appears that on the 11th the stubs of the Ken-Rad Corporation payments were among those given to the bookkeeper, and its accounts were credited by the several amounts. But there was no entry on the cash book kept by Rogers. The bank deposits were made by him and he made up the deposit slip in his own hand. It showed $3,600 in currency and $8,640.84 in checks, among which was listed that of the Ken-Rad Corporation for $3,230.78. It had not been included on the adding machine tape list made up by one of the clerks, but had been added by Rogers in pencil. The books reflected a shortage on that day of $3,155.96. At the end of the month it was $3,190. A reasonable deduction is that Rogers withheld cash substantially equal to the amount of the check.

Rogers testified there was an adjustment to be

made in one of the nine bills of the Ken-Rad Corporation, reducing it from $1,770 to $472, because one of the meter readings had been charged at the rate for lights instead of a special lesser rate for power. The check had been sent for the correct aggregate amount, so he corrected the stub. He deposited a stub for one bill of $1,480 at No. 2 window and all the others, amounting to $1,750.78, at No. 3 window. Asked why he did that, he answered:

> "For convenience. Possibly when I put it there, there was somebody being waited on at the window."

He put the check in his safe until the next day. The tellers deny that this was done. The stubs for electricity account that day showed receipts of $2,357.52 at No. 2 window, and $2,575.06 at No. 3 window. Comparing those amounts with the receipts through No. 1 window that day ($2,709.84) and the amounts collected on the previous day, and as well the proportions to the water collections, the receipts through these two windows were normal. If so large a special item as the divided Ken-Rad check had been put through the windows as Rogers claims, it would have been prominently reflected in its proportions. More significant perhaps is the fact that the checks amounted only to $1,407.11 at No. 1 window, to $1,810.38 at No. 2 and to $2,210.92 at No. 3. The receipts and their classes for other days were put in evidence by way of comparison. Rogers further testified that he always kept on hand after the day's deposit a large amount in checks. Thus on October 10, he had $13,629.60, but deposited only $819.07 on that day. After the deposit on the 11th of $12.248.83 (which included the Ken-Rad check), he had in his hands checks, currency, and silver amounting to $12,713.84, as he testified. No explanation is given why they were not also deposited. These facts were circumstances to be considered in connection with the positive contradictory testimony and the absence of entries other than on the accounts of the Ken-Rad Corporation.

A public accountant was asked about the amount received from customers on October 10, and responded that he had an adding machine tape showing the collections, and over objection was permitted to state what it showed. Appellant contends that this was

prejudicial admission of hearsay evidence. Counsel overlook a previous interrogation in which the witness had stated that he himself had added those accounts, and, later, that he had checked them back with two men. The evidence was competent. Bush v. Board of Education of Clark County, 238 Ky. 297, 37 S. W. (2d) 849.

The principal instruction under which the defendant was found guilty is criticized. It advised the jury if they believed from the evidence beyond a reasonable doubt that the defendant

"did unlawfully, willfully and feloniously appropriate or convert to his own use and benefit lawful money of the United States, amounting to $3,230.78, or any sums of lawful money of the United States of value, and the personal property of the city of Owensboro, Kentucky, and with the intent to deprive the city of Owensboro, Kentucky, thereof, and to convert the same to the use and benefit of himself,"

etc., they should find him guilty as charged in the indictment.

It is argued that this did not clearly define embezzlement with which he was charged, because a particular element of the crime is a "fraudulent conversion," and the instruction did not advise the jury that the appropriation and conversion must have been fraudulently done. This criticism has been made in another case against the appellant, and the instruction held not to be prejudicially erroneous, in an opinion styled Rogers v. Commonwealth, 264 Ky. 187, 94 S. W. (2d) 345, delivered May 8, 1936.

Another criticism is that the instruction is confusing and susceptible to the construction that the defendant feloniously appropriated $3,230.78 lawful money, and, in addition thereto, other property of the city of Owensboro. Nicety of expression required that the word "and" in the phrase "and the personal property of the city of Owensboro" be omitted. We are sure, however, that the jury understood that the phrase "personal property of the city of Owensboro" was descriptive of the ownership of the money charged to have been feloniously appropriated. But if they read it as appellant submits they might have done, then it was to his advantage, for it required the jury to believe

he converted not only the money but other property as well. There was no evidence or claim that there was such additional property embezzled.

The indictment expressly charged the embezzlement of $3,230.78, but it did not say that it was the check of the Ken-Rad Corporation. A bill of particulars gave details of the receipts on October 10 through the windows and specifically of the check of $3,230.78 by Rogers personally. It detailed the credits on the customers' accounts, and charged the accused with the embezzlement of the difference of $3,155.96. It is argued that the instruction was erroneous because it did not limit the jury to the consideration of an embezzlement in the sum of $3,270.78, or any part of the proceeds of the check for that amount, but expressly authorized a conviction if the defendant had embezzled any sums of money, whether large or small, or at any time. We think the instruction was proper, for the charge was not of the embezzlement of the Ken-Rad Corporation check specifically, but of money of the city to the amount of $3,155.96. The amount of money or value of property embezzled is immaterial, and although the taking of a certain sum may be charged, a conviction may be had on proof of the conversion of a less sum. Morse v. Commonwealth, 129 Ky. 294, 111 S. W. 714, 33 Ky. Law Rep. 831, 894; Clary v. Commonwealth, 163 Ky. 48, 173 S. W. 171.

It appears that on cross-examination by appellant's counsel a clerk related that the collections through the windows did not balance every day with the amount of the stubs, and she was asked to give details. The records disclosed that upon many days there were petty differences ranging from shortages of 2 cents to $1.38, and overages of 4 cents to $14.01. The jury, as sensible men, well understood that the defendant was not being tried on any of these petty items, or that they should be considered in making up their verdict. The argument is that the instruction may have led the jury to understand they had a "roving commission" to convict the defendant if he embezzled any of these or other sums than part of the proceeds of the check, which it is said was the specific embezzlement the commonwealth had elected to try. After detailing the accounts from October 9 to 13, inclusive, the bill of particulars concluded:

"The commonwealth further states that on the 10th day of October, 1933, the difference in the amounts collected and the credit given to the consumers and deposits was $3,155.96, which it is charged that the said C. A. Rogers, converted to his own use."

We regard this prosecution under the indictment and bill of particulars as a bar to further prosecution for these or other items covered by the period and accounts described. Morrow v. Commonwealth, 157 Ky. 486, 163 S. W. 452. As stated, they were brought out by the defendant himself and in any event the defendant cannot and indeed does not complain of the introduction of these items into the case.

The evidence clearly established the defendant's guilt and his trial was exceptionally free of error.

The judgment is accordingly affirmed.