## Patton v. Commonwealth.

Feb. 24, 1942.

628

Napier & Napier, Calloway W. Napier, Calloway W. Napier, Jr., and Moss Noble for appellant.

Hubert Meredith, Attorney General, and Jesse K. Lewis, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER—Reversing.

In the city of Paris, at about midnight between the 4th and 5th days of December, 1940, appellant, Troy Patton, shot and fatally wounded Clifton Arnsparger, deputy sheriff of Bourbon county. At the time of the shooting appellant was accompanied by his brother, Dennis Patton. He was indicted for murder on the 10th day of March, 1941, which was the first day of the next regular term of the Bourbon circuit court. On that day he filed motion, supported by affidavit, requesting the regular judge of the court to vacate the bench on the grounds that he would not afford the defendant a fair and impartial trial and would not impartially decide his application for change of venue. The motion was sustained, and the Honorable Henry Clay Kauffman of Lancaster was designated special judge to preside upon the trial. On the following day defendant filed application and supporting affidavits for change of venue, to which response was filed on the 13th day of March. Evidence was introduced on the motion and the application for change of venue was denied. After exhausting the regular panel in an endeavor to obtain an impartial jury, defendant's motion that jurors be summoned from a county not in the 14th judicial district was sustained, and a special panel was summoned from Fayette county. The trial of the case was actually commenced on the 31st day of March, 1941, completed on the 3rd day of April, resulting in the rendition of a verdict finding the defendant guilty of murder in the first degree and fixing his punishment at death. His motion for a new trial was overruled.

On this appeal he urges five substantial grounds for reversal, which are: The court erred (1) in overruling defendant's motion for a change of venue; (2) in admitting incompetent evidence and refusing to admit competent evidence; (3) in failing, on the request of defendant, to admonish the jury with respect to the purpose for which evidence was introduced of crimes committed by defendant before and after the happening of the homicide; (4) in instructing the jury; (5) in overruling the motion to set aside the swearing of the jury and continue the case because of improper argument of the commonwealth's attorney in his closing argument.

The right to trial by an impartial jury of the vicinage is one of the bulwarks of freedom upon which this nation and each of its independent states were founded, and for one hundred fifty years has been preserved and

specifically guaranteed to the citizens of this commonwealth by Section 11 of our Constitution. The right to a change of venue is a privilege founded upon the fundamental right of a trial by an impartial jury; consequently, where it appears that the state of feeling at the seat of the court, which would otherwise have jurisdiction, is such as will not afford to the defendant this guarantee, the venue of the trial should be removed to a place where a fair trial may be had upon the determination of a jury whose mind is free of prejudice, not only in respect to the persons charged with the crime, but in respect to the commission of the alleged crime in all its aspects. Full discussion of the principles underlying these rules may be had by reference to the opinions in the following cases: Estes v. Commonwealth, 229 Ky. 617, 17 S. W. (2d) 757 and Bradley v. Commonwealth, 204 Ky. 635, 636, 265 S. W. 291. In those opinions it was pointed out that the defendant applying for a change of venue has the burden of proving the ground upon which he relies, and that the trial court is vested with a wide discretion in determining the issue; but, such discretion is not an arbitrary one and may be reviewed by this court, and, if upon such review it appears that the discretionary power was not properly exercised, a reversal of the judgment will be ordered. Many opinions from this court on this issue are referred to in the Bradley case, supra, and all of them harmonized in such manner as to render them consistent with the principles hereinbefore referred to. It is therefore unnecessary for us to make further exposition of such principles. In some of the cases referred to above, the unanalyzed statements of witnesses would, as in this case, preponderate against the granting of the application for a change, but, when analyzed and considered in the light of other facts and circumstances which appear in the evidence, this court came to the conclusion that the witnesses introduced by the commonwealth to support its objection to the application were influenced in their opinions by the general prejudice of the community, which fact rendered such opinions of little value in a determination of the issue. We have come to the conclusion that the circumstances surrounding this case place it in that category. The commonwealth introduced 15 witnesses in person, the affidavits of 36 others, and it was stipulated that the direct and cross examination of all the commonwealth witnesses would substantially conform to that of those who person-

ally appeared. Each of the witnesses for the common-
wealth stated emphatically that in his opinion the de-
fendant could obtain a trial of his case in Bourbon coun-
ty at the hands of an impartial jury, and each of them in-
terrogated upon the point claimed that he could sit with-
out bias as a juror in the case; but, their opinions of
what would constitute a fair trial do not agree with the
principles enunciated in the various opinions of this
court. It seems that all the witnesses, or most of them,
were of the opinion that the conditions of a fair trial
would be met by hasty and expeditious inquest, a ver-
dict of guilty, and punishment fixed at death, because
each of them stated that he was qualified and perfectly
willing to sit as a juror on the trial, although he had al-
ready come to the conclusion that the defendant was guil-
ty and should be punished accordingly. Their conclusion
that the defendant could have a fair and impartial trial
appears to have been predicated solely on the fact that
the citizens of Bourbon county were of such caliber as
to decide the case on all issues on the evidence and the
law as directed by the court, because at the time they
would be selected as jurors they would take oath to do so.
Reasonable time and judicious use of space will not per-
mit a review of the evidence of all the witnesses. Our
purpose will be served by a discussion of the testimony
of the first witness introduced by the commonwealth,
which, though more frank than the testimony of the
others, shows the inconsistency pervading the testimony
of most of the witnesses. Stated briefly, he testified that
he had had an opportunity to talk to many citizens repre-
senting all parts of Bourbon county; he was of the opin-
ion that defendant could and would receive a fair and
impartial trial, based on the instructions of the court as
to the law, and upon the evidence developed on the trial;
a competent jury could and would be summoned to try
the case which would render to the commonwealth and to
the defendant a fair and impartial trial; he was familiar
with the state of feeling in the county which was such as
would not intimidate any person called to serve as a
juror; expressions of public feeling were not kindly
toward the defendant; there was a time that some people
advocated hanging him, but they decided to let the law
take its course, and he had advised them so to do; he had
a fixed opinion as to the guilt of the accused, ''Yes I
have made up my mind to that,'' they were guilty but he
had no prejudice against them, ''absolutely none,'' he

never saw the people, would not know them if they would walk into the courthouse; and, if he were selected as a juror, he could lay aside any opinion he might have and give the defendant a fair and impartial trial, "absolutely, yes sir." He was then asked if it would take any evidence to overcome his opinion as to the guilt of defendant, whereupon he replied: "Yes sir, it would take a good deal." He was then asked if he thought any amount of evidence would overcome the opinion as to the guilt of the defendant. He replied that if he proved that he was in some place other than Paris that night he would believe that somebody else did the shooting. When asked if he would be willing to consider an alibi that the defendant was in Breathitt county on the night of the killing, he said:

"Well coming from Breathitt, I don't know.

"Q. What about Magoffin? A. I don't know whether that would be much better or not.

"Q. Meaning that if the evidence comes from Breathitt you don't know? A. Yes.

"Q. And why do you make this expression? A. Well, because you brought it out, in a way."

When asked what his state of feeling toward the defendant was, he answered that it was the same as the next morning after he read in the paper that "they had killed this boy"; at that time he thought he was guilty and should be punished accordingly. Immediately after making that statement, he was asked the following questions and made the following answers:

"Q. Then you would not, I take it, be willing, under the opinion that you have formed about the case and having a fixed opinion, you would not be willing to serve as a juror in this case? A. Yes sir, I would.

"Q. You would be willing to serve? A. Yes sir."

Let us now look to the circumstances relied upon by the defendant: The deceased had been a deputy sheriff of Bourbon county for several years and the cashier of a bank in Paris for a great number of years preceding his tenure of office as deputy sheriff; he was known, liked, and respected by practically every citizen of the county;

his father had been a prominent attorney of the Bourbon county bar for a period of 25 years and his family was one of the most prominent in the county; his acquaintanceship in that county was as wide as that of any of its citizens; he was a member of the local post of the American Legion, whose commander, in the interest of law and order, had felt it necessary to warn the people to refrain from violence against accused and permit legal procedure to take its course; the regular circuit judge, a resident of Bourbon county, vacated the bench on the ground that he feared he could not impartially preside; the entire personnel of the sheriff's office was taking an unusual interest in the prosecution of the accused; to avoid possible violence in an endeavor to lynch defendant, the county judge on two occasions had felt it necessary to and did transfer him from the Bourbon to the Fayette county jail; the sister of the defendant for two months had searched throughout the entire county in an endeavor to get citizens to sign affidavits that they were of the opinion he could not have a fair trial; practically all of the people interviewed admitted they were of that opinion but refused to sign such an affidavit for fear it would ruin them in their various businesses; employees fearing that if they signed such an affidavit their employer would discharge them, business men fearing that if they so expressed themselves by affidavit their customers would boycott them; finally she obtained the affidavits of only two citizens to the effect that the defendant could not have a fair trial. Fifty-one witnesses for the commonwealth expressed an opinion that a fair trial could be obtained, but proved by their testimony that it could not. It is not our purpose to adversely criticize these witnesses, because, we believe, in their biased state of mind, they honestly thought the accused could receive a fair trial—a prejudiced person is seldom cognizant of the bias which controls his judgment. In the light of the evidence presented and the circumstances shown, we have no alternative but to conclude that at the time this case was tried, it was impossible for defendant to obtain a trial at the hands of an impartial jury, and the learned judge erred in denying the application for a change of venue. Nor was the error cured by summoning a jury from another county. Estes v. Commonwealth, supra; Bradley v. Commonwealth, supra; Shipp v. Commonwealth, 124 Ky. 643, 99 S. W. 945, 30 K. L. R. 904, 10 L. R. A.. N. S., 335

A proper determination of the complaint that the court admitted incompetent evidence and refused to admit competent evidence and that it erred in failing to admonish the jury in respect to the evidence of crimes committed previous and subsequent to the happening of the homicide requires a brief resume of the facts, not only attendant upon, but leading up to and following the fatal shooting of deceased.

About an hour and a half before the shooting occurred, in the company of Clarence White, George Toohey, Jr., returned to his father's home in Bourbon county. As he started into the driveway, he noticed a car parked near the open gate. After momentary reflection, he reversed his direction and as he passed through the gate saw a man run out of his father's garage, get into the parked automobile, and drive off. The automobile was an Oldsmobile coach. He then conducted a search of the garage and discovered two tires and two wheels had been removed from his father's car. These happenings were reported to George Toohey, Sr., by the son; whereupon the former arranged by telephone to meet Mr. Arnsparger at an oil station on South Limestone Street in Lexington. After informing Fayette county officials of the commission of the crime, Messrs. Toohey and Arnsparger drove toward Paris, in the progress of which journey they encountered the car which had been described to them by Mr. Toohey's son. They stopped the car and inquired of its occupants, the Patton brothers, the way to Lexington. Instead of going to Lexington, they followed the Oldsmobile to Paris. Near the depot on 10th street, the Pattons were required to await the passing of a train, and, while thus delayed, they were overtaken by Messrs. Toohey and Arnsparger, both of whom alighted from their automobile and approached the other car from the side on which the driver was seated. The officer drew his pistol, and, in an endeavor to arrest the Pattons, unsuccessfully tried to open the left door of their car. Mr. Toohey testified that he did not hear the deputy sheriff say anything to the occupants of the Patton car, but the defendant admitted the officer told him he was under arrest. Dennis Patton alighted from the car with his hands raised, and, as the officer made his way to the other side of the car, defendant opened fire, inflicting the wounds resulting in Arnsparger's death. Defendant's brother submitted to arrest, but the defendant ran from the scene of the crime

and reached the home of a relative in Magoffin county. The tires and wheels which had been stolen from Mr. Toohey's garage were found in the car occupied by the accused. Learning that the defendant had fled to Magoffin county, two deputy sheriffs of Bourbon county, a police officer of the city of Paris, a highway patrolman, and the sheriffs of Magoffin and Breathitt counties proceeded to the home of defendant's relative. As they approached his place of hiding, the accused appeared, and, shooting at the officers, attempted to escape. In the exchange of shots, defendant was wounded, arrested, and taken to the Breathitt county jail. The court permitted the commonwealth to prove the facts relating to the breaking, entering, and stealing from the Toohey garage, defendant's flight from the scene of the crime, and his actions when apprehended in Magoffin county. That testimony was unquestionably competent for the purpose of showing that previous to the homicide a felony had been committed and that the deceased had reasonable ground to believe that the occupants of the Patton car were the perpetrators of the crime, and by reason thereof had the right to make an arrest; and to show the motive and intent of the defendant in resisting arrest and firing the shot that resulted in the death of the officer. Hickey v. Commonwealth, 185 Ky. 570, 215 S. W. 431; Keller v. Commonwealth, 230 Ky. 815, 20 S. W. (2d) 998, and cases therein cited. But, upon request by counsel for the defendant, it was the duty of the court to admonish the jury that such was the purpose for which the testimony might be considered and that it could be considered for no other purpose. O'Brien v. Commonwealth, 115 Ky. 608, 74 S. W. 666, 668; Bishop v. Commonwealth, 109 Ky. 558, 60 S. W. 190. It was likewise competent for the commonwealth to show in evidence of defendant's intent, guilty knowledge, and motive of desire to escape the consequences of the homicide, that he had fled from the scene of the crime, and, when accosted by the officers in Magoffin county he again attempted to escape, in furtherance of which he fired upon those warranted to make the arrest. Fallis v. Commonwealth, 197 Ky. 313, 247 S. W. 22; Stanley on Instructions, Section 791, page 1051. But there, again, it was incumbent on the court, upon motion of the defendant, to admonish the jury that such evidence could be considered by them solely for the purpose of showing motive, intent, and guilty knowledge. The failure to so admonish the jury

was error extremely prejudicial to the defendant, because, if the jury were permitted to consider this evidence for all purposes, it might be that they would conclude that a person guilty of the crime of breaking, entering, and stealing would be of such character as might reasonably be presumed would commit the crime of murder; whereas, under legal precepts such an inference may not be drawn. Robertson's New Kentucky Law and Procedure, Section 1804, page 1918. Unless cautioned that they could not consider the shooting in Magoffin county as proof of guilt of the homicide in Bourbon county, it is conceivable that a jury would accept the undenied occurrence in Magoffin county as strongly corroborative, if not conclusive proof, that the killing in Bourbon county had been perpetrated under the same identical circumstances. Thus, the jury would be permitted to consider evidence of the commission of another crime as unqualified proof of the commission of the crime for which defendant was then on trial, which is violative of the rules of evidence in criminal trials conducted in this commonwealth. Martin v. Commonwealth, 93 Ky. 189, 19 S. W. 580. The objection to the introduction of the evidence was properly overruled, but the court erred in overruling what the defendant terms in his brief "the breathlessly repeated request throughout the admission of this evidence for an admonition from the court for what purpose and to what extent it could be and should be considered by them."

We do not agree with counsel for defendant that the confession obtained at the hospital in Breathitt county was such as is condemned by Section 1649b-1 to 1649b-4 of the Statutes. There was no plying of questions by the officer who obtained the confession; he merely asked the accused why he had killed the sheriff, and the confession was a voluntary answer to his question. It may be that he asked him several times why he killed the deceased, but he was not subjected to any harassment as contemplated by Sections 1649b-1 to 1649b-4. There was, therefore, not sufficient evidence that the confession was not voluntary to submit the issue to the jury. Barrett v. Commonwealth, 254 Ky. 152, 71 S. W. (2d) 36; Caruth v. Commonwealth, 251 Ky. 143, 64 S. W. (2d) 495.

Neither do we consider to be meritorious the contention that the court erred in refusing to permit appellant to answer the following question:

"Tell the jury whether or not at the time you fired the shots, on this occasion, that you believed that you were then and there in danger of death or the infliction of some great bodily harm."

This question unquestionably was leading and amounted to the placing of the answer in the mouth of the witness. A lawyer with the ability that this court knows defendant's counsel to possess would have no difficulty in adducing the answer desired by propounding the question in its proper form. Likewise without merit is the contention that the evidence in this case is as consistent with appellant's innocence as it is with his guilt.

We now turn to appellant's complaint concerning the instructions of the court. While the omission of the phrase "not in his necessary or reasonably apparent necessary self-defense" in instruction No. 1 was not prejudicial because of the self-defense instruction, the better form will be observed if it is included and this should be done on the second trial. The instruction on voluntary manslaughter should require the jury to believe that the shooting of deceased by the defendant was wilful and intentional but without malice and that correction will be made on the second trial. Stanley on Instructions, Section 868; Montgomery v. Commonwealth, 26 Ky. Law Rep. 356, 81 S. W. 264. The failure of the court to instruct on conspiracy certainly was not prejudicial to the substantial rights of appellant, because the giving of such an instruction would have enlarged the field of facts which the jury would be permitted to consider in the determination of his guilt. The case of Howard v. Commonwealth, 114 Ky. 372, 70 S. W. (2d) 1055, cited by appellant in support of this complaint, is not authority that the defendant is entitled to an instruction on conspiracy. It merely holds that where a conspiracy is charged and evidence introduced in support of the conspiracy, it being the duty of the court to instruct on conspiracy, it was error for the court to fail to admonish the jury as to the extent and circumstances under which evidence of the acts and declarations of coconspirators were to be received against the accused.

Some of the points made in defendant's complaint on the self-defense instruction are well taken but are not of sufficient complexity to require a detailed discussion and thus unreasonably extend this opinion. On the next trial the errors complained of will be corrected by the

court in giving, which we hereby direct, the following instruction on self-defense:

"If the jury shall believe from the evidence that the defendant, at the time he shot and killed Clifton Arnsparger, if he did so, believed, and in the exercise of a reasonable judgment had grounds for believing, that Clifton Arnsparger, or George Toohey, Sr., or both of them, were then and there about to take his life, or the life of his companion, Dennis Patton, or to inflict some great bodily harm on them or either of them, and that there appeared to the defendant, in the exercise of a sound discretion, no other safe way to avert the danger, or apparent danger, if any, then pending, but to shoot and kill Clifton Arnsparger then he had the right to shoot and the jury in that event ought to acquit him on the ground of self-defense, defense of another, or apparent necessity therefor. But the court further instructs the jury that if you believe from the evidence that a short while before the defendant shot and killed Clifton Arnsparger, if he did so, on the night of December 4, 1940, the defendant had committed a felony by breaking into the storehouse or warehouse of George Toohey, Sr., in Bourbon county, Kentucky, and stealing therefrom property of value, towit: two automobile wheels and tires, the property of said Toohey and without his knowledge or consent, and that the defendant was fleeing from the scene of such crime, if any had been committed, and the deceased, Clifton Arnsparger, as deputy sheriff of Bourbon county, Kentucky, had received such information as would induce a person of ordinary prudence and discretion to believe that defendant had committed such felony, if any, and that acting upon such information and upon reasonable grounds he attempted to arrest the defendant for same and that the defendant for the purpose of preventing his arrest and with knowledge that the deceased was attempting to make such arrest, willfully and knowingly shot, and thereby brought on the affray in which he killed Clifton Arnsparger, if he did so, then and in that event, the defendant is not entitled to rely on the plea of self-defense as given in this instruction."

Question is made of the conduct of the common-

wealth's attorney in his closing argument to the jury, but since the case must be reversed for other reasons and the complained of argument likely will not be repeated on the next trial, we deem it unnecessary to discuss this complaint.

Wherefore the judgment is reversed with directions that it be set aside and that the defendant be granted a new trial to be conducted in a manner not inconsistent with this opinion.

Whole Court sitting.