## QUARLES v. COMMONWEALTH.

Court of Appeals of Kentucky.
Oct. 12, 1951.

Rehearing Denied Feb. 29, 1952.

Wm. F. Edmunds, Hopkinsville, for appellant.

A. E. Funk, Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

STANLEY, Commissioner.

The judgment imposes the penalty of death on Jessie Lee Quarles for the murder of Everett Grady. Appellant submits as reversible errors the admission of incompetent evidence and improper argument of the Commonwealth's Attorney.

The appellant, a young Negro, had returned to Hopkinsville from service in the army about three days before the murder. About midnight of June 21, 1950, he approached the driver of a taxicab parked

near the bus station with a dollar bill and sought to engage him. He took Quarles to another cab immediately in front of his, in charge of the deceased Grady. Willie Sanders and wife, in another part of the city, were awakened by a man hollering for help, including the shout, "It's a holdup." The car had run into and broken Sanders' yard gate. There was some scuffling in the car and then a pistol shot and moaning. After a brief interval, another shot was fired. Grady jumped out of the cab and over the fence into the yard and the car drove away. Grady was fatally shot in the abdomen and back and was beaten on the head. George Harris and wife, living across the street, testified to hearing the call for help, the statement that it was a holdup and the pistol shots. Grady died at the hospital a short while afterward. The appellant abandoned the taxicab and was arrested early the next morning.

The Commonwealth's witness, Denny P. Smith, also a young Negro, identified the pistol with which the shooting was done as belonging to Walter Brim and himself. He testified he did not hear about the killing of the taxicab driver but "I guess it was last summer, don't remember what date," about seven o'clock in the evening, Quarles, Brim and he were drinking moonshine whiskey together. He and Brim fell asleep after he had put the pistol in a dresser drawer. When he awoke, the defendant and the pistol were gone. He found Quarles in Brown's restaurant, and he asked the witness to go with him. They walked "over the railroad" to a certain place, and Quarles drew a pistol on him and "I gave him a dollar" which he had borrowed from Brim's mother, apparently in Quarles' presence. During their travels around town Quarles shot the pistol into the ground. They parted about "a quarter to twelve," Quarles saying he was going to Camp Campbell to see his wife. The witness could only say this occurred "one night last summer."

Appellant's argument is that Smith's testimony of being robbed by him was incompetent because it was evidence of a different offense and, in any event, was too remote or indefinite as to time in relation to the killing of Grady.

Brim testified as to the occasion of the three men drinking together and of the pistol having been taken. He fixed the hour at 7:30 or 8:00 of the night Grady was killed.

The Commonwealth introduced a signed statement of the defendant in which he admitted the shooting of Grady, but claimed it was accidental. He testified, with more elaboration, to the effect that he had given the taxi driver a dollar to take him to his cousin's home, and had no intent whatever to rob him; that as he was getting up off the back seat, his pistol dropped out of his belt; Grady grabbed it and during the scuffle for its possession, the pistol went off again. He insisted that he told Grady, "This is no stickup" but he kept scuffling with him trying to get possession of the pistol. The story of the accidental firing of the pistol does not harmonize with the fact that the defendant was on the rear seat and the deceased in front and that he was shot in the abdomen and in the back. Nor does the defendant undertake to explain the beating on the head. During the course of his examination, the defendant related his association with the witnesses, Smith and Brim, that night, although differing in details, which he made favorable to himself. He had corroboration of some immaterial circumstances. He denied robbing Smith and firing the pistol in the ground.

As to the matter of time, Brim and the defendant himself fixed it, as being the same night, so the argument of remoteness fails.

It is the rule in all jurisdictions that evidence of an independent offense is inadmissible even though it may have some tendency to prove the commission of the crime charged, because the probative value of the evidence is greatly outweighed by its prejudicial effect. This is especially so where the evidence is of an isolated, wholly disconnected offense. But the balance of scales is believed to be the other way where there is a close relationship to the offense

charged. Of such is an act which tends to establish identity, motive, intent or design or a plan to commit the offense charged. The appellant relies upon Butler v. Commonwealth, 284 Ky. 276, 144 S.W.2d 510, in which we held prejudicial a series of questions tending to show numerous offenses. Neither the case nor those cited in support of it are in point here for the offenses were unrelated to the crime for which the accused was then being tried and did not tend to show any plan or design to commit it. The purpose of their introduction was unfair, being merely to show the defendant to be an evil, lawless person.

In Douglas v. Commonwealth, 307 Ky. 391, 211 S.W.2d 156, we held competent as tending to prove identity testimony that the accused, earlier in the afternoon of the commission of the crime for which he was being tried, namely, malicious shooting and wounding by firing a pistol from an automobile while passing the victim on the road, had drawn a pistol on another stranger and threatened him. In that case we also held that evidence of the possession of a blackjack concealed in his automobile on another occasion was not admissible, for it was unrelated. Of like character was certain evidence held inadmissible for any purpose in Crawford v. Commonwealtth, 241 Ky. 391, 44 S.W.2d 286.

We do not think the evidence violates the rule of admissibility. The testimony identified the defendant's possession of the fatal weapon and showed a plan or purpose of using it to obtain money by force. The possession of the pistol and the robbing of Smith were all done in the course of the evening, and the whole formed a connected story.

It is further argued that if the testimony be deemed competent, then the court erred in failing to admonish the jury of the purpose of its admission. After the introduction of the evidence, the defendant objected "to all the foregoing" and his objection was overruled. But there was no request for an admonition as to its purpose, nor was the attention of the court called to the omission. We have consistently held that the defendant, by such inaction, waives his right to have the jury admonished. Rogers v. Commonwealth, 264 Ky. 187, 94 S.W.2d 345. It would be inhumane to place the responsibility for the infliction of the death penalty upon the technicality that the attorney failed to request the admonition in addition to objecting to the evidence if it was prejudicial. We therefore, look beyond that and consider the merits of the point of reversible error.

An admonition as to the purpose of evidence of an extraneous offense is deemed to be proper in most instances, but failure so to admonish the jury is not regarded as prejudicial error unless it shall so appear from the whole record. Rogers v. Commonwealth, 264 Ky. 187, 94 S.W.2d 345. It was held in Patton v. Commonwealth, 289 Ky. 627, 159 S.W.2d 1006, to be prejudicial where the evidence was of a series of violent acts, and the court denied a special request for such an admonition. But in many other cases the failure of the court so to advise the jury has been held not prejudicial. Getting by robbery the dollar for the taxicab fare just before the killing, though perhaps not res gestae, was part of the defendant's continuous conduct directly leading to the crime for which he was being tried. We cannot conceive that the omission of advice of the technical purpose of admitting evidence of the defendant frightening his drunken companion into giving him the money, or the aimless firing of the pistol into the ground, in any way affected the jury or its verdict. Even though we give to the case the extreme consideration that the penalty of death demands, we hold that the omission of the admonition was not prejudicial to the rights of the accused.

The argument of the Commonwealth's Attorney claimed to be prejudicially improper is his statement that the defendant "is a mean nigger." It was not a proper argument but, without doubt, was harmless.

The judgment is affirmed.