## Lee v. Commonwealth.

October 31, 1947.

W. J. Baxter, Judge.

Beverly White for appellant.

Eldon S. Dummit, Attorney General, and Guy H. Herdman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

In the late afternoon of November 19, 1946, appellant, Noah Lee, shot and killed Lee Ballard on appellant's premises in Powell County, which he had lately purchased from the Angel heirs. Mrs. Angel, the widow, married the deceased following her first husband's death.

The purchase of the tract by appellant was at public auction and the auctioneer testified that there were certain articles of personal property excluded from the sale, as well as the right of pasturage on a certain field until the first of the following January. The deceased with his family resided on a farm some two miles from the one they had sold to appellant. On the latter tract there was a log dwelling house and a barn, the first of which appellant, after his purchase, had practically dismantled by taking out one entire end and piling the logs in front of the house, which some of the witnesses said was as high as five feet. Some of the side logs were also removed and the floor torn up.

A controversy had arisen between appellant and the deceased and, perhaps, other members of his family, as to what rights had been reserved. At an early hour of the day of the homicide appellant sent a note to Ballard which said:

"Ballard and Angel family

"Your corn crusher tobacco sticks will be out in the County road and you must get them at wonce and keep your stock off of my farm and stay out yourself. I mean all the Ballard and Angle family. from Noah Lee."

A son, Clarence Angel, 18 years of age, lived with his mother and his step-father at their home located, as we have said, two miles from the place where the homicide occurred. On the afternoon of the day indicated the deceased and his step-son spent part of the afternoon in stripping tobacco and shucking corn, finishing around 4:30 p. m. Shortly after that the step-son discovered that one of the cows belonging to the family was missing and since she had theretofore been pastured, on the sold tract both before and after the sale of it to appellant, he and his step-father went to the tract that had been sold, the step-son carrying along a shotgun for the purpose, as he stated, to kill whatever game might be found enroute.

The old log house that had been dismantled was some 30 or 40 feet from the public road which it faced. At the edge of the road there was a ditch some foot or more deep. They had not traveled that road all the way but entered it somewhere close to the place where the homicide was committed. The step-son testified that just as he and his step-father arrived in front of the log cabin appellant rose from behind the log pile above described and asked, "What are you doing there?" and then fired "two or three times from his pistol," two shots hitting the deceased. One of the bullets, according to the undertaker, entered his body "in the approximate center of the left side just to the left of the medial line, coming out below the center rib on the right-hand side." The other wound was a "flesh wound on his right center finger." The step-son also testified that after receiving the body wound as described the deceased began to reel and fell in the ditch, but in falling he grabbed the gun which witness was carrying and fell before he could use it. Appellant testified that Angel pointed his shot-gun at him but before it could be fired deceased grabbed it and likewise pointed it at him, when he commenced shooting. He denied being behind the log pile, but the coroner and several other witnesses testified that some four or five empty shells from a .38 caliber pistol were found behind the breast work of logs. He also testified that when he asked Angel, "where he was going with that gun," he at the same time said: "I told them not to come in there, I don't want to have any trouble, go on home" when Angel asked, "What does all this mean?," and it was then that he pointed the gun at him (appellant) when he fired the first shot in the ground in order to frighten them away.

Rondle Lee, son of appellant, in some respects corroborated the testimony of his father, but he was located behind the remnant of the dismantled cabin and could see, at least a part of the time, only through the openings in it. He was also partially behind the truck that he and his father had driven to the place, carrying some material to repair some of the fences on the premises, in which they claimed to have been engaged when deceased and his step-son appeared. The above is substantially the evidence heard at the trial, though some more or less minor circumstances were proven by both

the Commonwealth and the appellant in substantiation of their respective theories.

The court instructed the jury on wilful murder; voluntary manslaughter; acquittal if the jury believed defendant was not proven guilty beyond a reasonable doubt, and that if a verdict of guilty was reached, yet if the jury entertained a reasonable doubt as to the degree of the homicide, they should convict the defendant of voluntary manslaughter. The jury was also instructed on appellant's right of self-defense against apparent danger from *only* the deceased, omitting altogether his right to also defend himself against apparent danger at the hands of Clarence Angel.

The jury convicted appellant of voluntary manslaughter and fixed his punishment at confinement in the penitentiary for a period of four years, from which he prosecutes this appeal. According to a strict interpretation of the Clerk's record, the imprisonment term was recovered from appellant, since it is adjudged: "It is, therefore, adjudged by the Court that the Comth. recover of the defendant its costs herein expended and four (4) years in the penitentiary."

For manifest reasons we will disregard that evident error in framing the judgment which was most likely done by the clerk of the court.

On this appeal counsel for appellant argues and relies on three grounds for a reversal of the judgment; (1) that the court erroneously instructed the jury on voluntary manslaughter, since, as argued, there was no evidence to support it; (2) the court erred in permitting the Commonwealth to introduce in rebuttal the auctioneer, one Everman, to testify as to when possession was to be given, which was announced at the time of the sale; and (3) "the court erroneously limited appellant's right to self-defense to defense against the deceased, Lee Ballard, when it should have extended his (right of) self-defense against Clarence Angel who was acting in concert with Ballard."

Argued grounds (1) and (2) are easily disposed of. There was evidence tending to show an altercation, consisting of more or less angry words, occurring at the time of the killing which the jury had the right to con-

clude that the homicide was committed in sudden heat and passion so as to reduce it to voluntary manslaughter. We are aware that this court has uniformly held that where there was no evidence tending to reduce the crime of homicide from murder to voluntary manslaughter, no instruction submitting the latter degree should be given, but we do not so interpret the testimony in this case.

Answering argument (2) it should be stated that there was some dispute as to what was reserved and there are facts proven that appellant questioned whether the use of the pasture was reserved; but were it otherwise, courts have a discretion to permit the proving of a fact by a witness introduced in rebuttal who had testified in chief, and which this court has so declared in numerous opinions, holding that such testimony would not constitute prejudicial error, unless the discretion was abused. As based upon such rulings we fail to see wherein appellant's substantial rights were prejudiced under the entire proof in this case.

Argued ground (3) is clearly meritorious. At two different places in his testimony appellant unequivocally testified that Clarence Angel pointed his gun straight at him, but appeared to have some trouble with pulling back the trigger. It was then that he fired his first shot to frighten his two assailants and to cause them to depart from the premises, but instead deceased grabbed the gun from Angel and commenced raising it to his shoulder when appellant fired his remaining shots. If appellant's testimony is true (and the jury might have believed it) he had the right in the exercise of his self-defense to defend himself against pending danger to his life or limb at the hands of either the deceased or his step-son and the court should have so instructed the jury. We have so held in an unbroken line of opinions, two of the latest ones being, Martin v. Com., 299 Ky. 1, 184 S. W. 2d 234, 239 and Gross v. Com., 299 Ky. 518, 186 S. W. 2d 190. Other prior cases so holding are: Watkins v. Com., 123 Ky. 817, 97 S. W. 740, 29 Ky. Law Rep. 1273; Bowling v. Com., Ky., 126 S. W. 360; Buttery v. Com., 211 Ky. 23, 276 S. W. 969; Lucas v. Com., 141 Ky. 281, 132 S. W. 416. After citing such former cases in the Martin opinion we then said (299 Ky. 1, 184 S. W. 2d 236): ''Likewise when a defendant testifies in his

own behalf, admitting that he committed the deed charged, and attempts to justify or excuse the act, his theory of the case should be presented to the jury in appropriate instructions, provided there be evidence to support it. Johnson v. Com., 268 Ky. 555, 105 S. W. 2d 641, and cases cited.''

It is therefore clear that the failure of the court to include appellant's right of self-defense against his alleged threatened danger by Clarence Angel in the self-defense instruction given, was and is prejudicial to appellant's rights, for which reason alone the judgment is reversed.