## NANTZ v. COMMONWEALTH.

Court of Appeals of Kentucky.

Nov. 30, 1951.

R. Campbell Van Sant, Frankfort, (Grant F. Knuckles, W. R. Lay, Pineville, J. B. Carter, G. E. Reams and William Wall, all of Harlan, Van Sant & Young, Frankfort, of counsel), for appellant.

A. E. Funk, Atty. Gen., Squire N. Williams, Jr., Asst. Atty. Gen., for appellee.

WADDILL, Commissioner.

Charlie Wade, Ray Smith, and appellant, Oral Nantz, were jointly indicted for the murder of Joe Hensley. Tried separately, appellant was found guilty and his punishment fixed at death. We shall consider the following grounds relied upon for reversal: (1) error in dismissing appellant's petition for change of venue, (2) error in admitting incompetent evidence, (3) error in permitting prejudicial statements of the prosecuting attorney, and (4) error in failing to instruct the jury upon the whole law of the case.

The evidence of the Commonwealth reveals that on the night of April 25, 1951, Joe Hensley was slain shortly after his stepfather, Avery Hensley, had been killed.

Both killings occurred in the business district of Harlan. Immediately before his death, Joe Hensley was riding alone in the rear seat of a taxicab driven by Don Harville. When the cab reached the bus station, Harville was ordered to stop by someone in a police car of the city. When Harville stopped his cab, appellant and two city policemen, Charlie Wade and Ray Smith, emerged from the squad car and approached the taxi. Appellant had a "long gun" and the policemen had pistols. Without a word being spoken, appellant opened the door of the cab, jerked Harville out and proceeded to club him on the head with his gun. During the assault appellant's weapon was discharged. When Harville was able to make an escape, appellant fired his weapon into the rear of the taxicab where Joe Hensley was seated. Hensley's death was caused by a bullet which entered his face below the left cheek bone. This version of what occurred at the scene of the homicide is supported by the testimony of Don Harville, Charlie Wade, Arthur Campbell, and Carl Lee Bierly.

Appellant testified that he had been on a fishing trip with Allan Nidifer and Dewey Blanton and had arrived home about 11:30 on the night that Hensley was killed; that shortly thereafter he left home to keep an appointment with Nidifer at a restaurant in Harlan, taking his shotgun with him for protection. He stated that before he reached the restaurant an automobile appeared, occupied by Don Harville and Joe Hensley; that these men cursed and abused him and jumped out of their car, each with a pistol in his hand and engaged him in a scuffle. Appellant said he struck Harville on the head with his shotgun causing it to fire accidentally. He stated his gun discharged only one time; that other shots were fired, but he did not know who shot them. He denied shooting decedent or having a pistol. The only other witness introduced by appellant was his wife who testified that she was at her home when the tragedy occurred.

The first question presented is whether or not the court committed error in refusing to grant appellant a change of venue. In his application therefor, appellant states

that he would be unable to receive a fair and impartial trial in Harlan County because of the adverse and widespread publicity the slayings have received. He alleges that following the slayings, Ray Smith, Charlie Wade and appellant were indicted for the murder of Joe Hensley, and Claude Beach and Wheeler Beach were indicted for the murder of Avery Hensley; that the slayings have been publicized by word of mouth, newspapers, and radio. Appellant filed copies of numerous issues of newspapers published in Harlan County containing prominent news articles and editorial comment about the slayings which advocated that strong law enforcement policies be pursued in the prosecution of the cases. He further alleges that on account of the extensive relationship and influence of the Hensley family in Harlan County and because of the active part they and their friends will take in the prosecution of the case, it will be impossible to know, recognize or determine by examination of prospective jurors, where and to what extent the jurors will, or might be affected by business, financial, political, or other actions of the Hensley family. For these reasons appellant states that it will be impossible to obtain a jury from Harlan County which will not have persons on it with preconceived opinions, either consciously or unconsciously regarding the guilt or innocence of appellant.

To understand the significance of the grounds relied upon by appellant, it should be pointed out that when the case against Claude Beach was called for trial, the Commonwealth sought a change of venue. In support thereof, it introduced the sheriff of Harlan County, the manager of the Harlan Daily Enterprise and numerous other prominent citizens who testified in effect, that due to the widespread publicity the two killings had received they were interwoven in the minds of a large number of the people living in Harlan County and because of the extensive relationship and political and business influences of the parties it would be difficult to select a jury from Harlan County that would be free of bias. We observe that the Commonwealth's Attorney referred to the Beach cases and the Nantz, Smith, and Wade cases as companion cases in his questioning of one of the witnesses. Prior to the court's ruling upon the Commonwealth's motion, an agreement was entered permitting a special venire to be summoned from Letcher County to try the Claude Beach case. Three days after the verdict was rendered in the Beach case, appellant's case was called for trial. The Commonwealth resisted appellant's motion for a change of venue. On the hearing of the motion appellant introduced the sheriff of Harlan County, who testified substantially the same as he had on the Beach hearing. His testimony was to the effect that it would be difficult to obtain a fair and impartial jury from Harlan County to try appellant but that it could be done. He stated that one of his deputies was a relative of the decedent and was active in the prosecution of the Beach case. The manager of the Harlan Daily Enterprise testified regarding the extensive publicity that had been given the slayings by his newspaper and by other papers throughout Harlan County. He said there was much feeling and talk about the slayings and it would be a hard task to obtain an unbiased jury in Harlan County. The Commonwealth introduced several witnesses who testified that in their opinion a fair and impartial jury could be obtained in Harlan County to try appellant. Appellant moved the court to permit him to introduce and make part of the record the official transcript of evidence heard on the motion for a change of venue in the Beach case. The court overruled the motion and refused to consider that evidence and ordered the sheriff to summon a jury to try appellant from Harlan County. The majority of this court are of the opinion that under the circumstances attending appellant's application, this testimony was competent and should have been considered by the trial court in deciding the issue. We have carefully considered all the testimony and find that it affirmatively appears that at the time the application was made appellant could not obtain a fair and impartial trial in Harlan County. Therefore, we are constrained to hold, by a majority vote of this Court, that the trial court committed prej-

udicial error in denying appellant a change of venue at the particular time the motion was considered.

We further find that appellant's contentions, numbered two and three, are meritorious, and we shall discuss the errors appearing so that they will not occur on another trial.

■ Appellant objected to several remarks made by the attorney of the Commonwealth, both in his opening and closing statements to the jury. In his opening statement he said in part: "I will show that Joe Hensley's stepfather was killed only a few hours before and that Joe Hensley was on the scene at the time or within less than a minute and that this fact according to the theory of the Commonwealth was the motive for his being killed."

And further: "Avery Hensley, the stepfather of Joe Hensley was killed. The killings occurred on Central Street within two blocks of each other and within three hours of each other."

These statements were not competent and the court committed error in not excluding them from the jury's consideration under a proper admonition.

■ During the trial, over the objection of appellant, the Commonwealth introduced Gene Cornett and proved that Joe Hensley arrived at the scene of the Avery Hensley killing less than a minute after it occurred. The court overruled the objection and motion of appellant to discharge the jury, and gave the following admonition: "Gentlemen of the jury: This defendant is not charged or accused of having anything to do with the killing of Avery Hensley. This court permits this evidence to go to you for whatever evidence it might be worth. I don't know what the Commonwealth has about any connection; consider that for what it is worth, of course. The fact that Avery Hensley was killed does not militate against the defendant. You may consider that evidence about Joe Hensley being in

close proximity to the first killing of Mr. Hensley for whatever it is worth."

The court's admonition was in fact an emphasis upon the evidence. This admonition did not limit the jury's consideration of the evidence in any respect. Under the state of the record we find that the court's ruling was erroneous.

■ In his closing argument the Commonwealth's Attorney said: "This mother has been robbed of her husband and son the same night."

This statement, in our opinion, was made for the sole purpose of directing the jury's attention to the fact that there had been two murders committed in Harlan on the same night. By inference it was very damaging since the jury might have believed appellant was involved in both crimes. The attorney undoubtedly uttered it in his zeal to obtain appellant's conviction for a horrible crime. While his intentions may have been commendable, it is the duty of the court to see that every one charged with an offense obtains a fair trial in accordance with our rules of criminal practice and procedure. We find again that the court committed serious error in permitting the attorney to make such an inflammatory and prejudicial argument.

Appellant's final contention is directed to the failure of the court to instruct the jury that appellant could not be convicted on the uncorroborated testimony of his accomplice, Charlie Wade. He argues that an instruction under section 241 of the Criminal Code of Practice should have been given. It is suggested that upon re-trial in the event the court is in doubt as to the necessity of giving such an instruction, that it follow the rule announced in the case of Davis v. Commonwealth, 256 Ky. 423, 76 S.W.2d 259.

Wherefore the judgment is reversed with directions to grant appellant a new trial and for proceedings not inconsistent with this opinion.