## WARNELL v. COMMONWEALTH.

Court of Appeals of Kentucky.

Dec. 4, 1953.

Paul R. Huddleston, Bowling Green, for appellant.

J. D. Buckman, Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

MOREMEN, Justice.

This is the second appearance of the appellant, Roy Glen Warnell, in this court. The first case presented an appeal from a judgment whereby appellant was sentenced to life imprisonment for the murder, by strangulation, of Mrs. Virgie Stone. The judgment was reversed because the court was of opinion that "this record does not furnish evidence that tends to corroborate the testimony given by the accomplice either as to the establishment of the corpus' delicti or as proof of guilt of the appellant of the crime charged in the indictment. In fact, the evidence tends to corroborate the theory that she froze to death." Warnell v. Commonwealth, Ky., 246 S.W.2d 144, 148, February 8, 1952.

During the 1952 April term of the Warren Circuit Court an indictment was returned which accused Glen Warnell of being an accessory before the fact to the wilful murder of Mrs. Virgie Stone committed by feloniously aiding and abetting Rochie Bledsoe in the premeditated act of exposing her to severe cold while knowing she was in a helpless condition and unable to

provide for herself. Upon trial appellant was convicted and his punishment fixed at 21 years' confinement in the penitentiary.

The opinion in the first case stated in detail the facts. We pointed out the unsatisfactory character of the testimony given by Bledsoe and indicated that his contradictory statements were not of that quality of evidence which is acceptable. It was remarked that the sheriff had testified that Bledsoe had related to him three different versions of the manner of Mrs. Stone's death and that the coroner had testified that Bledsoe had told him Mrs. Stone was not dead at the time Warnell let them out of the car. That trial resulted in a verdict that Virgie Stone had died by strangulation while in the car based upon the testimony of Bledsoe to that effect.

The quality and worth of Bledsoe's testimony or statements were not enhanced after this case had been reversed and remanded.

The new record discloses that Bledsoe, while serving time at the Kentucky State Reformatory at La Grange, again recanted and, in the presence of the clinical psychologist, Harold E. Black, Parole Officer of the 8th Judicial District, Ben Logan, Director of the Division of Corrections of the Department of Welfare of Kentucky, Dr. W. E. Watson, and counsel for Glen Warnell, for the fourth time changed his story and gave a sworn affidavit to the effect that Warnell was not responsible for the death of Virgie Stone. (Bledsoe, at the second trial, stated that he gave this version because of personal threats that had been made by Warnell who was also in the penitentiary).

This was not the end of Bledsoe's abrupt changes. At the second trial, he gave these conflicting statements concerning Mrs. Stone's condition at the time she was taken from the car and he started up the road to the uninhabited tenant house:

"Q. As to whether or not she was drunk and completely passed out or dead—are you sure about it? A. I am not sure about it.

"Q. But you know she was drunk? A. Yes, sir."

He later testified:

"Q. Was she living or dead when you took her out of the car? A. Dead.

"Q. Rochie, when did Mrs. Stone die? A. On the Plum Springs Road.

"Q. Who killed her? A. Glen Warnell."

The foregoing is an abandonment of the theory that Mrs. Stone froze to death and the return of Bledsoe to the original theory that she was strangled by Warnell while in the car.

And again:

"Q. Was she dead at the time you were dragging her up the road? A. Yeah.

"Q. Are you sure about that? A. Yeah."

On redirect examination he stated that he knew she was drunk but was not sure whether she was living or dead at that time and on recross examination he testified this way:

"Q. Now just a moment, was she drunk or was she dead when you removed her from the car? A. Don't know exactly, but her was drunk— her was, I know.

"Q. Well, why did you tell this jury yesterday that she was dead out on the Plum Spring Road? A. Well, her wasn't breathing, nor nothing, it didn't look like.

"Q. She was breathing on the Plum Springs Pike? A. Where we stopped at, it didn't look like her was."

And again:

"Q. Did she breathe at any time after you took her from the car? A. I don't think her did."

And again:

"Q. Rochie, it doesn't make much difference to us what story you tell, but pick out one and stick to it. Was she living or dead when you took her out on the lane? A. I think her was dead."

We must bear in mind the fact that appellant was indicted as accessory to Mrs. Stone's murder which was committed by Bledsoe by exposing her to severe cold at a time when she was in a helpless condition. If she was murdered in this manner, it was necessary to show that she was alive at the time she left the car because there was no intimation that she froze to death while in the automobile. We believe it is impossible for anyone to determine from the testimony of Bledsoe—without the aid of wild speculation—what were the true facts in this case.

In the consideration of this case we have kept in mind that usually it is within the province of a jury to pass upon the credibility of witnesses, but before a jury is given the right to make this decision, the primary duty rests upon the court to determine whether or not the evidence which has been presented is something of substance and relative consequence, having the quality of legal proof and having fitness to induce conviction.

In the instant case proof of the most material fact rests upon the testimony of a witness who thoroughly discredited himself by falsely swearing concerning a fact about which it is not likely that he could have been mistaken. On some occasions he testified that Mrs. Stone was alive; on others, he testified positively that she was dead; and at still other times he cautiously tempered his statements with a degree of uncertainty as to whether she was alive or dead. The only consistency in the character of his testimony was the certainty that he would change his last statement on the next occasion according to his caprice of the moment.

Since the abolition of the scintilla rule in this state, this court has ruled in a number of cases that even where there was a slight amount of proof which might conceivably have supported the inference of the commission of a crime, the proof was not sufficient to take the case to the jury.

In Fry v. Commonwealth, 259 Ky. 337, 82 S.W.2d 431, there was positive identification of a man accused of the crime of armed robbery which resulted in his conviction. The positive alibi of the defendant was so forceful and overwhelmingly convincing that the court held the verdict to be flagrantly against the evidence. A similar case is Davis v. Commonwealth, 290 Ky. 745, 162 S.W.2d 778. See also Rogers v. Commonwealth, 289 Ky. 83, 158 S.W.2d 144, and Coots v. Commonwealth, 295 Ky. 637, 175 S.W.2d 139.

We believe this instant case falls under the classification of cases described in Fyffe v. Commonwealth, 301 Ky. 165, 190 S.W.2d 674, wherein it was held that where there was only slight proof of the corpus delicti and nothing more than a suspicion that the defendant committed the alleged crime, the trial court should have directed a verdict of acquittal, for here, when testimony of the discredited accomplice is disregarded, the record does not present proof sufficient to take the case to the jury.

We have reached the conclusion, therefore, that the evidence is insufficient to sustain a conviction. Upon another trial of this case, if the evidence is the same or substantially the same, the court should peremptorily instruct the jury to find a verdict of not guilty. All questions raised by appellant and not discussed here are reserved.

Judgment reversed.