Albert HOWARD, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Feb. 5, 1965.

Rehearing Denied June 25, 1965.

Further Rehearing Denied Oct. 22, 1965.

M. C. Redwine, Jr., Winchester, John Y. Brown, Wm. H. McCann, Brown, Sledd & McCann, Lexington, for appellant.

Robert Matthews, Atty. Gen., Charles W. Runyan, Asst. Atty. Gen., Frankfort, for appellee.

DAVIS, Commissioner.

Appellant was charged with the murder of Marcus Lee Aldridge; he was convicted of voluntary manslaughter and sentenced to imprisonment for ten years. KRS 435.-010; 435.020. On this appeal he advances four grounds as bases for reversal: (1) the trial court should have directed a verdict of acquittal at the close of all the evidence, (2) the trial court erred in admitting pictures of the victim's body, (3) the court erred in permitting improper rebuttal evidence, and (4) appellant's right to fair trial was violated because the county attorney called the defense witnesses before a grand jury for the purpose of preparing for the trial of the pending indictment.

Just before 6:00 a. m. on May 27, 1963, the Clark County sheriff received a telephone call from Earl Hatton (a man who lived at appellant's home and who was jointly indicted with him for the homicide here involved). Hatton told the sheriff that he, Hatton, had shot Aldridge.

The sheriff promptly responded to the call. When he arrived at appellant's rural home he found Aldridge's dead body lying in the kitchen of the farm house; the feet of the body were at the door leading from the kitchen; the body was upon its back, and in such position to suggest that Aldridge had been facing the door when shot, and had fallen backward upon the kitchen floor.

The sheriff observed a butcher knife lying near the outstretched right hand of Aldridge's body; he also noted a .22 caliber semi-automatic rifle on a kitchen table in the same room.

When the sheriff arrived at the scene there were five persons present: the appellant and his wife, Marie; Earl Hatton and "Sherlock" Fuller; and a small child of appellant. At that time Hatton reiterated that he had shot Aldridge with the rifle; he asserted that he had had to do so in order to protect himself from Aldridge's effort to assault him with the butcher knife. According to the version that Hatton then related, there was no one else present in the kitchen when the shooting occurred.

■ Appellant and his wife confirmed to the sheriff that they had been abed, asleep, when the shooting occurred, but that they had been aroused by the sounds of the shooting. "Sherlock" Fuller, according to everyone's account, was asleep on a couch in a front room when the killing took place. Fuller had previously been convicted of perjury; the consequent incompetency as a witness precluded any evidence from him. KRS 421.090.

The evidence reveals without dispute that no wound was visible upon Aldridge's body

as the body lay on its back. However, when the deputy coroner arrived he examined the body and reported finding four bullet wounds; three of the wounds were in the upper portion of the right arm, entering from the rear; the fatal wound was in the back, just below the shoulder blade. The latter bullet pierced the lung and produced massive hemorrhage from which Aldridge died. Aldridge was dead when the deputy coroner arrived at about 6:20 a. m.; he estimated that death had occurred "maybe 25 to 30 minutes" earlier.

Before the body was moved, the sheriff caused photographs of it to be made; these were made by Floyd Hall, who was Chief of Police of Winchester at the time of the homicide, but who was a deputy sheriff when the trial of appellant occurred.

The sheriff had conversation with appellant during the course of examining the crime scene. Appellant told the sheriff he felt sure that Hatton had had to shoot Aldridge, and—according to the sheriff—explained that Hatton was attempting to force Aldridge to drop the knife, which occounted for the wounds in Aldridge's right arm.

Hatton was arrested by the sheriff forthwith. On May 29th, two days after the shooting, Hatton furnished a written statement to Clark County law enforcement officials. In the statement Hatton repudiated his earlier confession and averred that the appellant had done the shooting. According to Hatton's revised version, after the shooting had occurred, appellant prevailed upon Hatton to assume the blame for it. Hatton said that appellant directed Hatton to place the butcher knife by Aldridge's hand so that a self-defense plea could be made. Without detailing all of it, we observe that Hatton's second version of the incident fully placed the guilt upon appellant. Hatton accounted for his unusual conduct by his assertion that he was afraid of appellant. For the defense it was shown that Hatton had previously been convicted of a felony; it was also shown that on a prior occasion Hatton had sought to impli-

cate the appellant in a crime for which Hatton was subsequently convicted on his own guilty plea.

Appellant was arrested on June 1, following Hatton's statement of May 29th. Appellant denied then, and continues to deny, all that Hatton charged in the second version. It was shown that appellant had also been convicted of a felony some ten years before the present incident.

The prosecution and defense each adduced testimony which, if believed by the jury, could respectively have demonstrated a motive for appellant's animosity toward Aldridge, or a difficulty between Hatton and the deceased.

We turn now to consideration of appellant's claim that the court should have directed a verdict of acquittal for him. The contention is posited upon two grounds: (1) that the evidence of Hatton had been so completely discredited as to make a guilty verdict contrary to the evidence, and (2) that Hatton's evidence was uncorroborated, as is required by RCr 9.62. We consider these grounds in the order enumerated.

■ Appellant relies upon Warnell v. Commonwealth, Ky., 262 S.W.2d 683, in support of his contention that the evidence was inadequate to warrant submission to the jury. We believe the Warnell case is readily distinguishable from the present one. In Warnell it appears that the only evidence against the accused emanated from Rochie Bledsoe. As noted in the Warnell opinion, Bledsoe so thoroughly contradicted himself (both in the matter of changing his original story, and in the varying subsequent accounts he gave) that it was characterized as "wild speculation" for anyone to determine the true facts from Bledsoe's testimony. But the same thing may not be said of Hatton's evidence. It is true that Hatton first gave an account of the slaying utterly at variance with the account to which he testified. However, he did advance some reasons (plausible if believed—and not *ipso facto* unbelievable) for his changed version. He clung steadfastly to the second version. We think this case is of that type

that falls "within the province of the jury to pass upon the credibility of witnesses" as was specifically noted in Warnell. See 262 S.W.2d at p. 685.

▆ With respect to the claim that Hatton's testimony lacked corroboration as prescribed by RCr 9.62, it is our view that Hatton was not an accomplice within the meaning of that section. As previously noted, Hatton placed the entire crime upon appellant; conversely, appellant placed it all on Hatton. Neither claimed to have been a participant with the other. It is true that they were jointly indicted, but this does not make them accomplices, absent some showing that one aided and abetted the other. Ringstaff v. Commonwealth, Ky., 275 S.W. 2d 946; Anderson v. Commonwealth, 181 Ky. 310, 204 S.W. 71; Music v. Commonwealth, 186 Ky. 45, 216 S.W. 116. It may well be that Hatton became an accessory after the fact (under prosecution's theory accepted by the jury) when he at first exculpated appellant by assuming responsibility for the crime. But this does not make him an accomplice. Perkins v. Commonwealth, Ky., 324 S.W.2d 388. 6 Ky.Digest 1, Criminal Law, ▆▆▆▆ For the reasons assigned, we find no merit in appellant's first contention.

▆ We find no error in the admission of the pictures of the body of Aldridge as it lay on the kitchen floor. There is nothing about the photographs tending to incite passion upon the part of the jury. Indeed, the photographs do no more than reflect the form of a man lying on his back as if in peaceful sleep. No bloodstain appears, nor is there any evidence of a wound. Moreover, the pictures were relevant in that they gave pictorial demonstration that it was not possible that appellant could have known the whereabouts of the wounds on Aldridge's body, unless he had been told of it by Hatton, or unless he himself had been present and inflicted the wounds or seen them inflicted. Under these circumstances, we cannot say that error was committed in their admission. See Carson v. Commonwealth, Ky., 382 S.W.2d 85, 90;

Milam v. Commonwealth, Ky., 275 S.W.2d 921, and cases there cited.

▆ The next contention of appellant relates to the court's admission of certain evidence from the Clark County sheriff as *rebuttal* evidence. The basis of the complaint is that the sheriff had testified to the same facts on his direct examination. But there were certain areas of the testimony offered in rebuttal by the sheriff that did contradict what appellant had said when he testified. For example, when the sheriff had originally testified he related that appellant had said that he, appellant, had admitted Aldridge to the appellant's home at about 1:00 a. m. Appellant denied having said this, and asserted that he did not know that Aldridge was in his home until he happened to see him asleep at the kitchen table at about 3:30 a. m. At another point in his testimony, the appellant said that he did not remember having told the sheriff about certain wounds having been in Aldridge's arm—then he qualified this to the effect that he had obtained this information after Hatton had been lodged in jail—and that he may have made the statement at that time. On the whole, it seems to us that the sheriff's evidence fairly is rebuttal. However, in any event, we cannot see that any substantial right of appellant was prejudiced by admission of the evidence when it was admitted. RCr 9.24 directs that any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded. Based upon the reasoning of that rule and Lee v. Commonwealth, 305 Ky. 734, 205 S.W.2d 509, and cases collated in 6 Ky.Dig. 2, Criminal Law, ▆▆▆▆ we are impelled to the conclusion that there is no merit in this contention of error.

Finally, the appellant asserts that he was denied a fair trial, amounting to want of due process, by virtue of the fact that the county attorney for Clark County caused witnesses for appellant to be subpoenaed before the Clark County grand jury *after* the indictment against appellant had been returned by a former grand jury. Appellant relies upon United States v. Dardi,

330 F.2d 316 (2 C.C.A.) in which the salutary rule is announced:

> "It is improper to utilize a Grand Jury for the sole or dominating purpose of preparing an already pending indictment for trial."

■ We are in accord with the principle. Our difficulty is that we do not find sufficient indication of its violation here to warrant its imposition. The county attorney filed counteraffidavit, in which he conceded that the witnesses for appellant had been subpoenaed before the subsequent grand jury, but denied that the purpose was preparation for the instant trial. There was no showing that appellant was deprived of the full benefit of the testimony of any of these witnesses—neither did any of the witnesses relate that they had been threatened or otherwise coerced to withhold testimony favorable to appellant. Zeal in bringing law violaters to the bar of justice is commendable in prosecuting officials; however, the guaranties of due process and fair trial insure that the prosecution shall not use its offices and processes to intimidate defense witnesses. If such a showing is made, the courts must visit appropriate sanctions upon it. No such case appears before us.

The judgment is affirmed.

## ON PETITION FOR REHEARING

MONTGOMERY, Judge.

On petition for rehearing five grounds are urged, three of which are disposed of in the original opinion. It is urged in the petition, for the first time, that: (1) certain statements of the county attorney concerning a polygraph test, and (2) the failure to grant a change of venue on the second trial violated appellant's right to a fair and impartial trial.

■ A colloquy between the county attorney and appellant's counsel concerning a polygraph test took place before the bench and while the jury was in the courtroom.

Appellant contends that the county attorney's statements were loud enough to have been heard by the jury and thus were prejudicial. The record does not reveal that the jury heard any part of the colloquy. However, no objection was made to the alleged misconduct at the time, nor is it pointed out as error in the motion for a new trial or in appellant's brief. Such failure to object is considered a waiver and precludes the review of such claimed error. Hartsock v. Commonwealth, Ky., 382 S.W.2d 861; Lewis v. Commonwealth, Ky., 357 S.W.2d 31; Harris v. Commonwealth, Ky., 342 S.W.2d 535. It is likewise too late to raise such objection on petition for rehearing. RCA 1.350; Herrick v. Wills, Ky., 333 S.W.2d 275.

On December 9, 1963, appellant made an application for change of venue in which he alleged that he could not have a fair trial in Clark County. KRS 452.210; 452.220. The petition was supported by two affidavits. The application was denied on December 11, 1963.

■ At a subsequent term of court on June 24, 1964, the following proceedings were had:

> "THE COURT: The case of Commonwealth of Kentucky vs. Albert Howard called for trial. What says the Commonwealth?
>
> MR. CHENAULT: The Commonwealth's ready.
>
> MR. BROWN: The defendant answers ready, subject to renewing our petition for change of venue which had heretofore been filed, and which I assume there must be some order in the record overruling it.
>
> MR. REDWINE: It was never passed on.
>
> THE COURT: I don't think we had any hearing on change of venue.

MR. THOMPSON: There's an order overruling that, Your Honor please.

MR. BROWN: I just want the record to show we renew it as of today.

THE COURT: You have any additional evidence to offer on your renewal?

MR. BROWN: I don't have anything except I want the record to show that as of today we are renewing.

THE COURT: Let the record so show and that they offer nothing new on that."

A jury was called and the case proceeded to trial. Such action constituted a denial of the renewed motion.

It is to be noted that appellant offered nothing new in support of his motion to show that he could not have a fair trial on that date, June 24, 1964, more than six months later than the date of the application and the supporting affidavits. It obviously is necessary that the application for a change of venue be addressed to whether an accused can have a fair trial at the time the case is about to be tried, instead of at some time in the past or future. The state of public opinion or the conditions which would render a fair trial impossible may be dissipated in six months' time. Too many things may happen in this fast moving world for people in a community or county to retain for more than six months a state of hostile opinion or feeling against an accused that would deprive him of a fair trial.

■ The application for change of venue and supporting documents must be addressed to the conditions existing at or near the time of trial. In Patton v. Commonwealth, 289 Ky. 627, 159 S.W.2d 1006, the Court said:

"In the light of the evidence presented and the circumstances shown, we have no alternative but to conclude that at the time this case was tried, it was impossible for defendant to obtain a trial at the hands of an impartial jury, and the learned judge erred in denying the application for a change of venue."

In Nantz v. Commonwealth, Ky., 243 S.W.2d 1007, this Court held:

"We have carefully considered all the testimony and find that it affirmatively appears that at the time the application was made appellant could not obtain a fair and impartial trial in Harlan County."

■ The correct procedure, that is, successive applications before each trial, resulted in a reversal for failure to grant a change of venue in Brunner v. Commonwealth, Ky., 395 S.W.2d 382 (decided June 11, 1965). See authorities cited therein. The application made by appellant on December 9, 1963, did not present the state of public opinion on June 24, 1964, and the court was correct in denying it. The question raised concerning a hearing on the application is answered in the Brunner case.

Petition for rehearing overruled.