Dwayne Earl BISHOP, Appellant,

v.

John David CAUDILL, Judge, Floyd Circuit Court, Appellee.

and

Commonwealth of Kentucky (Real Party in Interest) Appellee.

No. 2001–SC–0443–MR.

Supreme Court of Kentucky.

Oct. 17, 2002.

Harolyn R. Howard, Assistant Public Advocate, Department of Public Advocacy, Pikeville, Vicki Lynne Ridgway, Raccoon, Counsel for Appellant.

Hon. John David Caudill, pro se, Prestonsburg, Counsel for Appellee John David Caudill, Judge, Floyd Circuit Court.

A.B. Chandler, III, Attorney General, Frankfort, Arnold Brent Turner, Turner, Hall & Stumbo, PSC, Prestonsburg, Counsel for Real Party in Interest Appellee Commonwealth of Kentucky.

COOPER, Justice.

Appellant Dwayne Earl Bishop was indicted by a Floyd County grand jury for the murder of his estranged wife, Carolyn Bishop. The issue now before us pertains to the post-indictment issuance of grand jury subpoenas to two prospective defense trial witnesses requiring them to testify before the grand jury about their knowl-

edge of facts pertaining to this case. Appellant believes the sole or dominant purpose of the subpoenas was to allow the prosecutor to improperly discover evidence relevant to Appellant's defense in order to facilitate the prosecutor's preparation for trial. The trial judge denied Appellant's motion to quash the subpoenas and overruled Appellant's request for permission to question the prosecutor under oath as to the purpose of the proposed grand jury investigation. Appellant then petitioned the Court of Appeals for a writ prohibiting the trial judge from allowing the Commonwealth to use the grand jury process for the purpose of discovery and trial preparation. The Court of Appeals denied the petition, holding that (1) Appellant does not have "standing to prevent testimony by these witnesses before the grand jury," and (2) Appellant "has an adequate remedy through motions to exclude or suppress the results of the improper use of the grand jury." Appellant appeals to this Court as a matter of right. Ky. Const. § 115.

Carolyn Bishop was murdered on or about August 31, 2000. Her body was discovered on September 2, 2000. In late September or early October 2000, Kentucky State Police Detective Glenn Thompson interviewed Samantha Kidd, the nine-year-old daughter of Appellant's girlfriend, Pamela Kidd. According to Thompson's report, Samantha identified several items of clothing connected to the murder as being similar to clothing owned by Appellant. Detective Thompson subsequently testified before a Floyd County grand jury, but did not include in his testimony the information he had obtained from Samantha Kidd. On October 26, 2000, the grand jury returned indictment number 00–CR–00061 charging Appellant with murder. Following arraignment, trial was scheduled for June 18, 2001. Meanwhile, Pamela Kidd filed an internal affairs complaint against Detective Thompson regarding his interview of Samantha.

Sometime prior to April 16, 2001, the prosecutor had a conversation with Pamela Kidd at which time Kidd advised that she knew Appellant did not commit the murder, that she had spoken with Appellant numerous times by telephone on the day of the murder, that he could not have done it, and that she had information regarding a house located near the area where the victim's body was discovered that was the real location of the murder. According to an affidavit filed by the prosecutor, Kidd also "implied" that individuals other than Appellant actually committed the murder; and when the prosecutor suggested that she furnish this information to the grand jury, Kidd stated that neither she nor her daughter, Samantha, would testify before the grand jury or at trial. On April 16, 2001, subpoenas were issued under the caption of indictment number 00–CR–00061 commanding Pamela and Samantha Kidd to appear before the grand jury for the purpose of testifying on behalf of the Commonwealth.

In its written response to the motion to quash the subpoenas, the Commonwealth gave the following explanation for their issuance:

> In this case, there is a minor child who has made very important statements regarding the murder case to the lead Detective. The statements were made while the girl was in the custody of her father. Subsequently, when custody was returned to the mother (the adult witness subpoenaed herein), the Commonwealth learned the mother had made threats that she would not permit the minor witness to testify in any way, shape or form. This is blatant witness intimidation and the Grand Jury is entitled to subpoena both the adult witness

and the minor witness in order to discover information on this matter. Of course, there is also all the information contained in the Commonwealth's Attorney's Affidavit whereby the adult witness has admitted that she has relevant and exculpatory information with regard to the murder case. After receiving such information, it is the Commonwealth's absolute duty to present same to the Grand Jury.

A grand jury is charged "to inquire into every offense for which any person has been held to answer *and for which an indictment or information has not been filed,* or other offenses which come to their attention or of which any of them has knowledge." RCr 5.02 (emphasis added); *Bowling v. Sinnette,* Ky., 666 S.W.2d 743, 745 (1984). It follows that, after an indictment or information has been filed, the grand jury's function with respect to that particular indictment is concluded. On the basis of additional *inculpatory* evidence, the grand jury can issue a new, superseding indictment charging the defendant with additional offenses or naming additional defendants; however, there is no authority permitting a grand jury to recall or quash a rendered indictment on the basis of newly discovered *exculpatory* evidence, or to amend a rendered indictment to add new charges or additional parties. The proper procedure upon discovery of other culpable parties is for the grand jury to render either a superseding indictment or separate indictments against the new parties and for the Commonwealth to move, in the case of a superseding indictment, for dismissal of the original indictment, or, in the case of new indictments against additional parties, for a joinder of indictments for purposes of trial. RCr 9.12. Since the Floyd County grand jury has no present authority to hear additional evidence with respect to indictment number 00–CR–00061, it is reasonable for Appellant to suspect that the purpose of the grand jury subpoena issued to Pamela Kidd is to discover the nature of her claimed exculpatory evidence so as to facilitate the prosecutor's preparation for trial.

We do not question the grand jury's authority to investigate Pamela Kidd's alleged violations of KRS 524.040 and KRS 524.050 (though the prosecutor's affidavit does not allege the commission of an offense but only a threat to commit an offense). However, it cannot do so within the context of indictment number 00–CR–00061, the murder indictment against Appellant. Thus, it is also reasonable for Appellant to suspect that the purpose of the grand jury subpoena issued to Samantha Kidd is not to obtain evidence against Pamela Kidd but to obtain Samantha's sworn testimony to the information she had previously furnished to Detective Thompson, presumably for possible impeachment purposes. If the purpose of subpoenaing Pamela and Samantha Kidd before the grand jury is to use the grand jury proceedings as a guise for trial preparation, the subpoenas must be quashed. *In re Grand Jury Proceedings (Fernandez Diamante),* 814 F.2d 61, 70 (1st Cir.1987); *cf. Howard v. Commonwealth,* Ky., 395 S.W.2d 355, 358–59 (1965).

Inquiry into a claim of grand jury abuse is neither a pure question of fact nor a pure question of law. *United States v. Flemmi,* 245 F.3d 24, 27 (1st Cir.2001). Despite having made a prima facie showing that there was no valid purpose for the issuance of these subpoenas, Appellant has been denied the opportunity to conduct even an inquiry into the purpose of this grand jury investigation. The trial court's order recites that "the appearance of witnesses before the Grand Jury does not constitute the taking of depositions," and that "the Commonwealth indicates that

[Samantha Kidd] is not being called to testify directly about the case against the Defendant, Dwayne Earl Bishop, [but] to testify as to possible witness intimidation by someone against her other than Dwayne Earl Bishop." Of course, the issue is not whether the appearance of a witness before the grand jury is a deposition, but whether the grand jury process is being improperly used as a substitute for discovery depositions which, absent court order or agreement of the parties, are not permitted in a criminal case. RCr 7.10. And if the purpose of Samantha's testimony is to elicit evidence of separate criminal activity by her mother, why was the subpoena issued under the caption of the murder indictment against Appellant?

■ The Court of Appeals' holding that criminal defendants do not have standing to inquire into grand jury investigations is generally correct, but only "[s]o long as it is not the sole or dominant purpose of the grand jury to discover facts relating to [a defendant's] pending indictment." *United States v. Breitkreutz*, 977 F.2d 214, 217 (6th Cir.1992) (quoting *United States v. George*, 444 F.2d 310, 314 (6th Cir.1971)). *See generally In re Grand Jury Proceedings (Fernandez Diamante), supra*, at 65–68. The fact that the subpoenas were issued under the caption of indictment number 00–CR–00061 warranted an inquiry into the "sole or dominant purpose" of the grand jury's investigation. The Court of Appeals' conclusion that Appellant has an "adequate remedy through motions to exclude or suppress the results of the improper use of the grand jury" begs the question. Appellant has been precluded from determining whether the grand jury is being improperly used. And if the sole or dominant purpose of this grand jury investigation is to discover facts relating to Appellant's defense so as to assist the Commonwealth in its trial preparation, a

motion to "exclude or suppress" the results of that discovery would be an exercise in futility. As noted in the famous case of *Bender v. Eaton*, Ky., 343 S.W.2d 799 (1961), once information is improperly discovered, it cannot be recalled. *Id.* at 802. Said another way, that which has been discovered cannot be "undiscovered" by subsequent motions and appeals.

Accordingly, we reverse the Court of Appeals and remand with directions to issue the requested writ prohibiting the trial court from allowing the grand jury to subpoena defense trial witnesses for testimony until an evidentiary hearing has been held and a determination made as to whether the sole or dominant purpose of the issuance of those subpoenas is to facilitate discovery by the Commonwealth of facts pertaining to Appellant's defense against that indictment and, if so, to quash the subpoenas.

LAMBERT, C.J.; GRAVES, JOHNSTONE, and STUMBO, JJ., concur.

KELLER, J., concurs in part and dissents in part by separate opinion.

WINTERSHEIMER, J., dissents because BISHOP had an adequate remedy through motions to exclude or suppress the results of any improper use of the grand jury.

KELLER, Justice, concurring in part and dissenting in part.

I agree with the majority's conclusion that extraordinary relief in the form of a writ of prohibition is appropriate in this case because it is unlikely that post hoc appellate review will provide Appellant with a meaningful remedy if the Commonwealth actually uses the grand jury's investigative powers for the "sole or dominating purpose of preparing an already

pending indictment for trial."[1] Accordingly, I concur in the majority's holding to the extent that it remands this case to the Court of Appeals and instructs it to issue a writ "prohibiting the trial court from allowing the grand jury to subpoena defense trial witnesses until ... a determination [is] made as to whether the sole or dominant purpose of the issuance of those subpoenas is to facilitate discovery by the Commonwealth ...."[2] I dissent, however, and write separately from the majority, because I disagree with the majority's suggestion that, in order to make the necessary determination, the trial court must conduct an evidentiary hearing[3] at which defense counsel presumably would examine the Commonwealth's Attorney under oath regarding the reasons for the subpoena's issuance and the topics upon which the attorney intends to examine the witness before the grand jury. While I recognize that the trial court in this case now must reach an informed decision as to the reason that these subpoenas were issued, I fear that the majority overlooks the possibility that the remedy it has fashioned here could—not only in this case, but in future cases—impair legitimate grand jury investigations by lifting the veil of secrecy surrounding those proceedings. In my opinion, this Court should require a higher threshold of evidence of wrongdoing before it subjects attorneys for the Commonwealth to cross-examination under oath as to details of ongoing grand jury investigations. Accordingly, I dissent from the majority opinion to the extent that it holds that the trial court must conduct an evi-

dentiary hearing in order to determine whether the Commonwealth is misusing the grand jury's subpoena power to prepare its case against Appellant for trial. And, I propose an alternative procedure that would—by allowing trial courts the discretion to determine, in a particular case, the appropriate means to examine evidence as to the prosecuting attorney's motives—shield criminal defendants from abuses of the grand jury's subpoena power while also maintaining grand jury secrecy to the greatest extent possible.

Grand juries are charged with investigating all "offenses which come to their attention or of which any of them has knowledge,"[4] and "[c]ourts are extremely reluctant to scrutinize grand jury proceedings as there is a strong presumption of regularity that attaches to such proceedings."[5] While Commonwealth's Attorneys assist grand juries in their investigations,[6] the prosecution may not use the grand jury to conduct discovery in connection with a pending indictment. Unfortunately, it is sometimes difficult to draw a bright line between legitimate investigations and improper trial preparation:

> While it is easy to say that the court's inquiry must focus on the primary purpose underlying the grand jury's involvement, there is a fine line between an improper "trial preparation" use of a grand jury and a proper "continuing investigation." The fine line is difficult to plot and, in most instances, determining whether a prosecutor has overstepped it

---

1. *Howard v. Commonweath,* Ky., 395 S.W.2d 355, 358–359 (1965) (quoting *United States v. Dardi,* 330 F.2d 316 (2nd Cir.1964)).

2. Majority Opinion at 87 S.W.3d 1, 4 (2002).

3. *Id.* (directing the Court of Appeals to issue a writ directing the trial court to quash the

subpoenas "until an evidentiary hearing has been held and a determination made ....").

4. RCr 5.02. *See also* KRS 29A.240.

5. *Commonwealth v. Baker,* Ky.App.,11 S.W.3d 585, 588 (2000).

6. RCr 5.14.

will depend on the facts and circumstances of the particular case.[7]

In recognition of this difficulty, courts have applied a presumption of regularity to such subpoenas and assigned to the moving party the burden of demonstrating the Commonwealth's improper use of grand jury proceedings.[8]

When a party alleges that the Commonwealth is preparing to use the grand jury improperly and moves to quash a subpoena issued on the grand jury's behalf, a trial court's inquiry into that allegation is complicated by the fact that it does not have the benefit of hindsight[9] and must attempt to assess the Commonwealth's motives *before* the Commonwealth questions the witness in front of the grand jury. Because grand jury proceedings are secret,[10] an open and public inquiry into the reason(s) why a particular witness has been subpoenaed could compromise that secrecy and impair the grand jury's legitimate investigatory functions. Accordingly, I believe that a procedure designed to protect criminal defendants from potential abuses of the grand jury's subpoena power must also consider the importance of maintaining the secrecy of grand jury investigations.

To this end, I believe that, in this and in future cases, trial courts' factual findings in this regard should be made in accordance with a procedure that allows trial courts the discretion to conduct evidentiary hearings in appropriate cases, but that recognizes the presumption of regularity in grand jury proceedings and thus requires prosecuting attorneys to reveal information about grand jury investigations only when necessary. Thus, I believe that the moving party first should be required to make a prima facie showing that the prosecuting attorney intends to use the grand jury "for the sole or dominating purpose of preparing an already pending indictment for trial." The moving party could satisfy this prima facie showing by filing an affidavit or other evidence demonstrating that. (1) the grand jury has already returned an indictment against the moving party; and (2) after the return of the indictment, a witness who is likely to testify at the trial of the pending indictment has been subpoenaed to testify before the grand jury. If, after reviewing this evidence, the trial court is satisfied that the moving party has made a prima facie showing, the trial court should then require the prosecuting attorney to file, under seal, an affidavit identifying his or her reasons for subpoenaing the witness to testify before the grand jury[11] and outlining the topics upon which he or she intends to examine the witness. If the trial court is satisfied from an *in camera* review

---

7. *United States v. Flemmi*, 245 F.3d 24, 28 (1st Cir.2001).

8. *Id.*

9. *Id.* ("Thus, if a grand jury's continued [investigation] *results in* the indictment of parties not previously charged, the presumption of regularity generally persists. So too when the grand jury's investigation *leads to* the filing of additional charges against previously indicted defendants." (emphasis added)).

10. RCr 5.16, 5.18, 5.24. *See also United States v. Calandra*, 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561, 568 (1974) ("Traditionally, the grand jury has been accorded wide latitude to inquire into violations of criminal law. No judge presides to monitor its proceedings. *It deliberates in secret and may determine alone the course of its inquiry.*" (emphasis added)).

11. *Cf. In Re Grand Jury Proceedings (Fernandez Diamante)*, 814 F.2d 61, 65 (1st Cir.1987) ("The government contended that the prime purpose of the Puerto Rico grand jury was the investigation of crimes other than those named in the Connecticut indictment. In support of this claim, the government submitted a sealed affidavit . . . .").

of the prosecuting attorney's affidavit that the Commonwealth is not using the grand jury for trial preparations, it should make a finding of fact to that effect and deny the motion to quash the subpoena. But, if the trial court is not satisfied with the Commonwealth's explanation after reviewing the affidavit, the trial court could either quash the subpoena, or, in its discretion, receive additional evidence in a closed hearing before making factual findings and ruling upon the motion to quash.

While I recognize a hypothetical risk that the procedure outlined above could lead to an erroneous decision by the trial court that prejudiced a criminal defendant under a pending indictment—i.e., in an extremely unlikely case where an attorney for the Commonwealth submitted a false affidavit as to the purpose behind a witness's testimony before the grand jury—I do not believe this theoretical possibility supports the majority's view that an evidentiary hearing is a necessary first stage in this inquiry. If a trial court were to deny a motion to quash the subpoena on the basis of representations made by an attorney for the Commonwealth in an affidavit, and a witness subsequently testified before the grand jury, the trial court could, in its discretion, elect to review the witness's grand jury testimony.[12] And, if, upon such review, the trial court were to determine that the witness was in fact subpoenaed before the grand jury for the sole or dominating purpose of preparing an already pending indictment for trial, the trial court could and should grant any and all relief reasonably necessary to protect the defendant's right to a fair trial—beginning with, but not limited to, preventing the Commonwealth from benefitting from its improper use of the grand jury by: (1) prohibiting the Common-

wealth from using the witness's grand jury testimony for any purpose at trial and suppressing any evidence the Commonwealth obtained as a result of or in response to the witness's grand jury testimony; and (2) disqualifying the Commonwealth Attorney's office involved in the abuse from further prosecution of the indictment in question and prohibiting any member of that office from directly or indirectly communicating the substance of any information gleaned from the grand jury examination to any attorney subsequently appointed to prosecute the indictment.

In this case, I believe Appellant has made a prima facie showing that the prosecuting attorney may have issued these subpoenas to examine defense witnesses before the grand jury in connection with trial preparations. Under the procedure outlined above, this prima facie showing "puts the ball in the Commonwealth's court." Although the majority opinion indicates that the Commonwealth filed a written response to Appellant's motion to quash the subpoenas and attached an affidavit,[13] the passage quoted in the majority opinion actually appeared in the Commonwealth's Response to Petitioner's Motion for Leave to Supplement the Original Petition for Writ of Prohibition and/or Mandamus in the Court of Appeals—a pleading filed nearly two (2) weeks *after* the trial court ruled on the motion to quash—and the affidavit referred to in the majority opinion was not even prepared until ten (10) days after the trial court's ruling. In fact, it is not clear from the limited record before us in this proceeding that the Commonwealth ever filed a written response to the motion to quash. No copy of such a pleading is attached to any of the plead-

---

12. *Cf. United States v. Doe,* 455 F.2d 1270 (1st Cir.1972).

13. Majority Opinion, *supra* note ___ at 2–3.

ings filed either in this Court or in the Court of Appeals, and the trial court's order denying the motion suggests that the basis for its conclusion was an oral representation (and an "off-the-record" one at that) by the Commonwealth:

> In an off the record conversation between the Court, Defense Counsel and the Commonwealth, the Commonwealth indicated that they had subpoenaed a witness who is a minor, and although the Commonwealth indicates that the witness is not being called in to testify directly about the case against the Defendant, Dwayne Earl Bishop, it is calling her in to testify as to possible witness intimidation by someone against her other than Dwayne Earl Bishop; and, therefore, the Court hereby OVERRULES the motion to quash that subpoena. (Emphasis added).

Although the Commonwealth's Attorney apparently told the trial court informally that the subpoenas had been issued to allow the grand jury to investigate potential witness intimidation as well as the possibility of other persons' involvement in the homicide for which Appellant has already been indicted, such statements do not constitute evidence upon which the trial court could base findings of fact. Thus, in my opinion, after the Court of Appeals issues a writ directing the trial court to quash the subpoenas pending the trial court's resolution of the underlying issue, the trial court should: (1) direct the Commonwealth's Attorney to file an affidavit as outlined above;[14] (2) consider this sworn testimony, as well as any other evidence it deems necessary; (3) make a finding of fact as to whether the Commonwealth subpoenaed these witnesses before

the grand jury for the "sole or dominating" purpose of obtaining discovery and/or preparing for Appellant's trial; and (4) rule on Appellant's motion to quash.

---

14. While I recognize that the Commonwealth Attorney filed an affidavit as an attachment in a pleading he filed in the Court of Appeals, this affidavit merely outlined the substance of a telephone conversation between Ms. Pamela Kidd and the Commonwealth Attorney and neither stated explicitly why the witnesses had been subpoenaed before the grand jury nor set forth the topics upon which the affiant intended to examine the witnesses.